MANETTA HOWELL et al., Petitioners, v LEO F. McGINITY et al., Respondents.

Second Department, June 8, 1987

### APPEARANCES OF COUNSEL

*Matthew Muraskin (Morton J. Marshack* and *Sharon E. Kivowitz* of counsel), for petitioners.

*Michael Colodner (John Eiseman, Ann Pfau* and *Ellen K. Boegel* of counsel), for judicial respondents.

*James M. Catterson, Jr.,* and *Snitow & Pauley (William H. Pauley* and *Steven A. Soloway* of counsel), for Sheriff of Nassau County, respondent.

### OPINION OF THE COURT

MOLLEN, P. J.

In this proceeding pursuant to CPLR article 78, we are called upon to resolve important questions concerning the respective functions of the judiciary and the Sheriff of Nassau County with respect to the detention of prisoners after arraignment.

### I

This proceeding arose from a condition of overcrowding

which has existed at various times over the past several years at the Nassau County Correctional Center (hereinafter NCCC). Difficulties related to the overcrowding at the NCCC have led to much litigation in both the Federal and State courts *(see, e.g., Badgley v Santacroce,* 800 F2d 33, *cert denied* — US —, 107 S Ct 955; *Badgley v Varelas,* 729 F2d 894; *County of Nassau v Cuomo,* 69 NY2d 737, *modfg* 121 AD2d 428). The litigation began with the filing of a class action lawsuit in 1980 in the United States District Court for the Eastern District of New York by NCCC inmates against, *inter alia,* the Sheriff of Nassau County, the Warden of the NCCC and the Chairman of the New York State Commission of Correction, seeking a declaration that conditions at the facility violated their constitutional rights. That action resulted in the entry of an amended consent decree which provided, *inter alia,* for a limitation on the number of inmates who could be housed at the NCCC. In that decree, the Sheriff of Nassau County and the Warden of the NCCC agreed that, with certain exceptions, they would not deliver to or accept at the NCCC any additional prisoners once the maximum population level was reached. The amended consent decree also dealt with a number of other issues, including staffing, visitation privileges, medical and library services, recreation, food services and double-celling, but made no mention of any other prison facilities maintained by the county.

On October 17, 1985, the plaintiffs in the Federal action moved for an order holding the county defendants in contempt of court for failure to keep the inmate population below the cap set forth in the amended consent decree. District Judge Mishler denied the motion, ruling that those defendants had not willfully violated its provisions and that they had made every reasonable effort to comply with the population limit. The United States Court of Appeals for the Second Circuit reversed, however, and ordered that the county defendants be held in contempt unless the NCCC population was brought below the limit in the amended consent decree within 30 days *(see, Badgley v Santacroce, supra).* In its decision, the Second Circuit specifically rejected the county defendants' argument that compliance with the amended consent decree was impossible, noting that that decree applied only to the NCCC and that there were procedures available under State law for the designation of an alternative place for confinement of inmates *(Badgley v Santacroce, supra,* at 37).

In September 1986, the Sheriff of Nassau County notified all

of the Judges of the Unified Court System of Nassau County that beginning Saturday, September 20, 1986, and continuing for the duration of the overcrowding crisis, his office would be unable to accept certain categories of individuals committed to his custody. The Sheriff also initiated certain other measures designed to relieve overcrowding, which included the transfer of some inmates to other detention facilities in the State, and a request that the New York State Commission of Correction designate another suitable place of confinement.

Upon receipt of that notification from the Sheriff of Nassau County, Justice McGinity, the Administrative Judge of Nassau County, determined that he would assign court security personnel to guard prisoners temporarily in court detention cells on those occasions when the Sheriff refused to take a prisoner who had failed to post bail. Justice McGinity directed that those prisoners be detained in the courthouse only until he completed negotiations with the Sheriff for the taking of custody. Justice McGinity's action was designed to avoid the necessity of releasing an individual who was considered to be a poor risk to return to court in the absence of the posting of proper security.

The petitioner Manetta Howell was arraigned in the District Court, Nassau County, on October 30, 1986, on charges of criminal possession of stolen property in the second degree (then a class E felony) and possession of mace (a class B misdemeanor). Bail was set at $3,000, which Howell failed to post. The petitioner Ronald Patterson was arraigned in the same court on the same date on a charge of criminal possession of stolen property in the third degree (then a class A misdemeanor). His bail was set at $500 an he did not post it. Both the petitioners were remanded to the custody of the Sheriff by District Court Judge O'Connell, but the Sheriff refused to accept custody of them. The petitioners were then interviewed by the Educational Assistance Center (hereinafter EAC) in order to determine whether that organization would post bail for them. The EAC ultimately decided not to post the bail. When Judge O'Connell sought to have the Sheriff of Nassau County take custody of the petitioners, he learned that the Sheriff's Deputies had left the courthouse, ignoring their statutory responsibility to take the petitioners into custody. Unable to communicate with the Sheriff and unwilling to release the petitioners, both of whom had lengthy criminal histories and multiple outstanding bench warrants, Judge O'Connell, upon the recommendation of Justice McGin-

ity, ordered that the petitioners be housed in the court detention cells overnight. The petitioners were then detained in separate cells in the detention area of the District Court from approximately 6:00 P.M. on October 30, 1986, until approximately 9:00 A.M. on October 31, 1986. At that time, the Sheriff did accept custody of the petitioners.

The petitioners then commenced the instant proceeding in this court against Justice McGinity, Judge O'Connell and Judge Marie G. Santagata, Supervising Judge of the criminal courts in Nassau County, seeking a determination that the petitioners' postarraignment confinement in the District Court detention cells was unlawful, prohibiting the respondent Judges from confining the petitioners in District Court detention cells, and prohibiting the respondent Judges from retaining custody of the petitioners in violation of the CPL or otherwise directing their confinement in facilities not authorized by the Correction Law and regulations adopted thereunder. The respondents served an answer and moved to join as additional party respondents the Sheriff of Nassau County, the Board of Supervisors of Nassau County and the Chairman of the New York State Commission of Correction. On December 15, 1986, this court granted that motion to the extent that it sought to join the Sheriff of Nassau County as an additional party respondent and denied it in all other respects. The Sheriff's answer was served on or about January 9, 1987. Upon our examination of the pleadings, we find that no triable issues of fact are raised and we therefore make a summary determination on the pleadings, papers, and admissions as if a motion for summary judgment were before us (see, Matter of 22 Park Place Coop. v Board of Assessors, 102 AD2d 893; CPLR 409 [b]).

II

As a preliminary matter, we note that since the petitioners are no longer confined in the courthouse detention cells, their rights cannot be affected by the determination in this proceeding and, as to them, it is therefore moot. However, because of the importance of the issues involved and the likelihood, given the continuing nature of the overcrowding crisis, that the issues will recur, it is appropriate to address the merits of the petitioners' claims to the extent that they seek a determination as to the rights and responsibilities of the judiciary and the Sheriff of Nassau County with respect to

the custody of prisoners *(see, Matter of Hearst Corp. v Clyne, 50 NY2d 707)*.

Matters pertaining to the custody of prisoners are addressed in various sections of the CPL, Correction Law and County Law. The function of a court in these matters is addressed in CPL 510.10 which provides in pertinent part as follows: "When a principal, whose future court attendance at a criminal action or proceeding is or may be required, initially comes under the control of a court, such court must, by a securing order, either release him on his own recognizance, fix bail or commit him to the custody of the sheriff". Significantly, the statute makes no provision for retention of custody by a court *(see also,* CPL 180.10, 510.15). Each county is required by County Law § 217 to maintain a county jail. Correction Law § 500-a states that county jails shall be used for the detention of persons charged with a crime and committed for trial or examination. Correction Law § 500-c designates the Sheriff as the official with "custody" of the county jail and requires him to "receive and safely keep, in the county jail of his county, every person lawfully committed to his custody".

The possibility of an emergency condition affecting the use of county jails has been anticipated by the Legislature in Correction Law § 504 (1). That statute provides as follows:

"§ 504. Designation of substitute jail

"1. If there is no jail in a county, or the jail becomes unfit or unsafe for the confinement of some or all of the inmates, civil or criminal, or is destroyed by fire or otherwise, or if a pestilential disease breaks out in the jail or in the vicinity of the jail and the physician to the jail certifies that it is likely to endanger the health of any or all of the inmates in the jail, the state commission of correction, upon application, must, by an instrument in writing, filed with the clerk of the county, designate another suitable place within the county, or the jail of any other county, for the confinement of some or all of the inmates, as the case requires. The place so designated thereupon becomes, to all intents and purposes, except as otherwise prescribed in this article, the jail of the county for which it has been so designated, and the purposes expressed in the instrument designating the same. The designation may be amended, modified or revoked by the state commission of correction by a subsequent instrument in writing filed with the clerk of the county".

This statute, and the regulations of the New York State

Commission of Correction (see, 9 NYCRR 7300 et seq.), place the responsibility for applying for designation of a substitute jail facility upon the facility administrator. In addition, the requesting county is required to identify another facility or other suitable place within the county which may be designated as a substitute jail. If no such suitable facility exists, the requesting county must decide whether the county jail of another county is able to accommodate the requesting county's prisoners (see, 9 NYCRR 7300.6).

It is now settled that the provisions of Correction Law § 504 (1) are applicable to conditions resulting from overcrowding (see, Matter of Adams v Meloni, 63 NY2d 868). In Meloni, the petitioners were pretrial detainees awaiting trial upon felony charges who were transferred from the Monroe County Jail to the Yates County Jail, 60 miles away, in order to alleviate a condition of severe overcrowding at the Monroe County facility. The petitioners challenged the transfer on statutory and constitutional grounds relating to access to their counsel. With respect to the statutory argument, the Court of Appeals held: "The transfer of petitioners by the Monroe County Sheriff was accomplished pursuant to clear statutory authority. Subdivision 1 of section 504 of the Correction Law provides that if a county jail becomes unsafe or unfit for the confinement of some or all of the inmates, the State Commission of Correction must designate another suitable place within the county, or the jail of any other county, for the confinement of such inmates. By order of the State Commission of Correction, dated August 11, 1982, the Yates County Jail was designated as a substitute jail for the Monroe County Jail. The hazards associated with an overpopulated prison are manifest and would certainly qualify the Monroe County Jail as 'unfit or unsafe' so as to justify the transfer of prisoners" (Matter of Adams v Meloni, supra, at 870).

■ It is apparent from an examination of the relevant statutory authority that ordinarily a court's responsibility for the custody of a prisoner not eligible for release on his or her own recognizance and unable to raise bail ends at the point that the prisoner is remanded to the Sheriff's custody and the time reasonably required to effectuate his transfer has passed. From that point on, the Sheriff has exclusive responsibility for custody of the prisoner, a duty that is imposed upon him by law and which is not excused even during periods when the county jail is unfit for occupation. In enacting Correction Law § 504, a statute which does not anticipate any participation by

the judiciary, the Legislature has made a determination that difficulties arising from the unavailability of the county jail, including unavailability due to overcrowding, are to be resolved by the Sheriff and the New York State Commission of Correction. In the case before us, Correction Law § 504 (1) is the mechanism provided by the Legislature to the Sheriff of Nassau County which the Sheriff is to use to relieve any condition of overcrowding which may exist at the NCCC, thereby rendering the intervention of the judiciary unnecessary. The responsibilities of the Sheriff of Nassau County in this matter are clear. If the NCCC is too overcrowded to accommodate the prisoners which the courts, in the lawful exercise of their responsibilities, have committed to his custody, the Sheriff is required to follow the procedures in the Correction Law. He must make an application to the New York State Commission of Correction for the designation of a substitute jail facility. He is not permitted to defy the lawful orders of the Nassau County courts by declining to accept the prisoners committed to his custody. With the remedies of Correction Law § 504 available to him, there is simply no justification for any refusal by the Sheriff of Nassau County to comply with his statutory obligations to take custody of prisoners committed to him by the courts.

The Sheriff has argued that any order of a State court requiring him to accept custody of all prisoners will necessarily cause him to violate the amended consent decree, thus exposing him to the risk of being held in contempt of the Federal court. We perceive no such conflict between the Sheriff's duties under State law and the requirements of the amended consent decree. The amended consent decree affects only the NCCC and would be totally inapplicable to any substitute facility which might be designated pursuant to Correction Law § 504. A State court order remanding a prisoner to the Sheriff's custody would not necessarily require him to house that prisoner at the NCCC. We note that our colleagues at the United States Court of Appeals for the Second Circuit also have observed that there is no conflict between the Sheriff's duties under State law and the Federal decree (see, Badgley v Santacroce, 800 F2d 33, 37, supra [where the court rejected the county defendants' argument that compliance with the amended consent decree would require them to violate New York law]). Designation of a substitute jail would permit the Sheriff to comply both with State law and the Federal decree, while at the same time avoiding the necessity

of releasing prisoners who are considered by courts to be poor risks to return.

Since the Legislature has seen fit to assign the responsibility for the custody of prisoners to a branch of government other than the judiciary, we now turn to the petitioners' contention that the assumption by the respondent Judges of the Sheriff's function constitutes an ultra vires act. " 'It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others' " (Saxton v Carey, 44 NY2d 545, 549, quoting from People ex rel. Burby v Howland, 155 NY 270, 282). More recently, in Matter of New York State Inspection, Sec. & Law Enforcement Employees, Dist. Council 82 v Cuomo (64 NY2d 233), the Court of Appeals acknowledged this principle while at the same time recognizing that there may exist, in rare instances, exceptional circumstances which would justify the exercise by the judiciary of powers normally reserved to the legislative or the executive branch: "[T]he manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the political branches of government * * * Where * * * policy matters have demonstrably and textually been committed to a coordinate, political branch of government, any consideration of such matters by a branch or body other than that in which the power expressly is reposed would, *absent extraordinary or emergency circumstances* * * * constitute an *ultra vires* act" *(Matter of New York State Inspection, Sec. & Law Enforcement Employees, Dist. Council 82 v Cuomo, supra,* at 240; emphasis added). As we have observed, the Legislature has not chosen to assign a role in the designation of a substitute jail facility to the judiciary, instead committing that task to the Sheriffs of the counties and the New York State Commission of Correction. Thus, it is clear that the assumption of such duties and the exercise of custodial functions over prisoners after arraignment are not normally within the power of the judicial branch of government "absent extraordinary or emergency circumstances". Whether such circumstances existed in the situation at bar will be determinative of the petitioners' claim that they were illegally detained.

Turning then to the facts of the case before us, we find it significant that Judge O'Connell ordered the overnight detention of the petitioners only after the Sheriff's Deputies left the

courthouse at the end of the day without fulfilling their responsibility to take the petitioners into custody. While the sanction of contempt would normally be available to a court to punish willful disobedience of a lawful court order, such a remedy would not of course, have resolved the problem of the detention of the petitioners. The court was thus confronted with an unpalatable choice between releasing the petitioners to the street without bail, an action it found to be contrary to the public interest, or detaining them overnight in the courthouse until such time as the order remanding them to the custody of the Sheriff could be enforced. In the face of this dilemma, we find that there existed "extraordinary or emergency circumstances" which justified the brief detention of the petitioners within the courthouse detention cells (see, Matter of New York State Inspection, Sec. & Law Enforcement Employees, Dist. Council 82 v Cuomo, supra).

We note that the court's exercise of custody over the petitioners terminated on the following morning, when the Sheriff agreed to take custody of them. Since the detention in the courthouse was for no greater period of time than was required to resolve the immediate emergent crisis, we conclude that the court's action was lawful.

We have examined the parties' remaining contentions and have found them to be without merit.

In light of the foregoing, the petition should be granted to the extent the Sheriff of Nassau County should be directed to accept custody of all prisoners lawfully remanded to his custody, and the respondent Judges shall not, absent extraordinary or emergency circumstances, exercise custody over prisoners after arraignment. The petition should otherwise be denied.

WEINSTEIN, RUBIN, EIBER and KUNZEMAN, JJ., concur.

Adjudged that the petition is granted, on the law, without costs or disbursements, to the extent that (1) the Sheriff of Nassau County is directed to accept custody of all prisoners lawfully remanded to his custody, an (2) the respondent Judges, in extraordinary or emergency circumstances, may retain custody over prisoners after arraignment, but in the absence of such circumstances, are prohibited from doing so, and the petition is otherwise denied.