THOMAS UGHETTO et al., Respondents-Appellants, v WENDY ACRISH, as Executive Director of Harlem Valley Psychiatric Center, et al., Appellants-Respondents.

Second Department, July 20, 1987

14

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Judith A. Gordon, Thomas P. Dorsey* and *Robert L. Schonfeld* of counsel), for appellants-respondents.

*Mental Hygiene Legal Service (Francis M. Savastano, Robert A. Feenick* and *William M. Brooks* of counsel), for respondents-appellants.

### OPINION OF THE COURT

BROWN, J.

On this appeal we are asked to determine whether plaintiffs, involuntarily committed patients at the Harlem Valley Psychiatric Center, are entitled to have their counsel present during psychiatric examinations conducted by psychiatrists whom the hospital intends to have testify at judicial retention hearings, and whether the plaintiffs may assert their privilege against self-incrimination and refuse to submit

to such examinations. We answer the first question in the affirmative and the second in the negative.

At the time of the commencement of this action, the plaintiffs were involuntarily retained as patients at Harlem Valley Psychiatric Center (the hospital) under judicial retention orders issued pursuant to Mental Hygiene Law § 9.33. Since the plaintiffs refused to consent to remain at the hospital as voluntary patients under the soon-to-expire retention orders and had no reason to believe that they would be released, they anticipated that the hospital would seek authorization for their continued involuntary retention. Intending to exercise their right to request a hearing to challenge the need for further retention (Mental Hygiene Law § 9.33), the plaintiffs anticipated that in accordance with hospital policy, following the application for a further court order or the patients' request for a hearing, the hospital would direct a nontreating psychiatrist to interview each of them for the purpose of having that psychiatrist testify at their retention hearings.

Accordingly, the plaintiffs commenced this action for a declaratory judgment and injunctive relief in which they challenged the procedures employed by the hospital in conducting those preretention hearing examinations. Specifically, they sought a declaration that they have a right to have counsel present whenever they are examined by either a treating or a nontreating psychiatrist whom the hospital intends to have testify at their retention hearings, and that their privilege against self-incrimination attaches whenever a nontreating psychiatrist examines them for purposes of testifying at their retention hearings such that they may refuse to submit to such examinations. The plaintiffs also sought an affirmative injunction to require the hospital to notify their counsel whenever they are to be examined by either a treating or nontreating psychiatrist whom the hospital intends to have testify at a retention hearing and to permit counsel to attend and observe the examination.

Following joinder of issue, the plaintiffs moved for summary judgment declaring the rights of the parties in their favor and for the injunctive relief sought. In its opposition papers, the hospital asked that summary judgment be granted in its favor pursuant to CPLR 3212 (b).

By decision and order dated September 13, 1985, the Supreme Court, Dutchess County (Lange, J.), held that the privilege against self-incrimination does not attach at the

prehearing psychiatric interview. On the second issue, however, the court declared that the right to counsel does apply at the prehearing psychiatric interview but held in abeyance, pending the submission of further briefs, the question of whether this right required that counsel be permitted to attend that interview *(Ughetto v Acrish,* 130 Misc 2d 74). Thereafter, by judgment dated February 26, 1986, Special Term (Lange, J.), *inter alia,* declared that the privilege against self-incrimination does not attach to the prehearing psychiatric interview and that the plaintiffs could not refuse to submit to such an examination, that the right to counsel applies at a prehearing interview by a psychiatrist who will testify, to the extent that counsel may observe the interview, that the hospital, in its discretion, must either permit the plaintiffs' counsel to observe the interview, or preserve the interview by means of videotape to be made available to counsel, with no other means being permissible unless stipulated to by the parties, that when counsel is permitted to be present or to view the interview through an observation mirror, counsel's function is to be limited to that of an observer and to take notes and counsel shall not be permitted to advise the client not to answer questions or to make objections, that when counsel is permitted to observe, the interview shall be held on 24 hours' notice to counsel, and finally, that the judgment shall apply to any interview conducted by a psychiatrist whom the hospital intends to have testify at a retention hearing, whether treating or nontreating.

The defendants, the hospital's executive and clinical directors, now appeal from so much of the judgment which declared that the plaintiffs have a right to counsel at a preretention hearing examination by a psychiatrist whom they intend to have testify at the retention hearing, and which declares the methods and conditions by which such right shall be exercised. They also appeal from so much of the prior order dated September 13, 1985, as initially granted that branch of the plaintiffs' motion which was for summary judgment on their claim that they have the right to counsel at the prehearing psychiatric interviews. The plaintiffs cross-appeal from so much of the judgment as denied that branch of their motion for summary judgment which was for a declaration that the privilege against self-incrimination attaches at a prehearing psychiatric interview, and declared that the privilege against self-incrimination does not attach to prehearing psychiatric interviews.

■ The defendants' appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the defendants' appeal from the judgment (CPLR 5501 [a] [1]).

■ With respect to the judgment, there are certain threshold procedural matters to be addressed. Firstly, there exists the issue of mootness, since the retention orders pursuant to which the plaintiffs were being retained at the commencement of these proceedings have long since expired. It appears, however, that certain of the plaintiffs continue to be retained under subsequently issued orders, although the hospital indicates that the plaintiff Norris is no longer a patient at the hospital. In any event, we are satisfied that the issues raised herein are of the type which are likely to be repeated and would otherwise evade review and we therefore conclude that the appeal is not moot *(see, Howell v McGinity,* 129 AD2d 60; *Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714-715; *Matter of Jones v Berman,* 37 NY2d 42, 57).

■ Another procedural issue with which we must concern ourselves deals with the scope of the judgment herein, which states, in the last decretal paragraph, that it "applies to any interview conducted at the Harlem Valley Psychiatric Center by a psychiatrist whom defendants intend to have testify at a retention hearing, whether the psychiatrist is a treating or nontreating physician". The hospital objects to this language on two grounds. First, it notes that there was never any request or order certifying this case under CPLR article 9 as a class action on behalf of all persons situated similarly to the plaintiffs, and therefore it argues that it was error to extend the scope of the judgment to cover patients other than the plaintiffs. While we agree, and accordingly modify the judgment by deleting the provision thereof which states that the judgment applies "to any interview" and substitute therefor a provision that the judgment applies "to interviews of the plaintiffs", we nevertheless note, as the hospital readily concedes, that since this case involves governmental action, any similarly situated patients will be protected by principles of stare decisis *(Matter of Jones v Berman, supra,* at 57; *Matter of Bey v Hentel,* 36 NY2d 747, 749).

■ The hospital's second objection with regard to the decla-

ration's scope is that it extends the right to counsel to examinations by both treating and nontreating physicians where the purpose of the examination is to prepare for testimony at a retention hearing. We conclude, however, contrary to the hospital's view, that in this respect the order was proper. While, as a matter of present policy, the hospital apparently only has nontreating physicians conduct these prehearing interviews, the rationale for permitting counsel to observe an examination conducted *solely* in preparation for a hearing—and not as a part of the regular course of treatment—applies equally whether the interviewer is a treating or a nontreating physician. Further, the petition specifically requested a declaration as to examinations by both treating and nontreating physicians.

We thus move to the two substantive issues presented on these appeals which concern the fundamental question as to what due process protections are available to involuntarily retained patients of a mental health facility.

The Fourteenth Amendment to the US Constitution provides, in relevant part, that "[n]o State shall * * * deprive any person of life, liberty, or property, without due process of law". Similarly, section 6 of article I of the NY Constitution provides, in part, that "[n]o person shall be deprived of life, liberty or property without due process of law". Here, the plaintiffs have, of course, been subjected to involuntary confinement away from their homes, their families, and their friends and have been deprived of their liberty. The actions of the State must, therefore, be subjected to careful judicial review with respect to constitutional requirements of due process. In short, the procedures by which the State imposes confinement upon an allegedly mentally ill person must conform to the dictates of due process *(see, e.g., Addington v Texas,* 441 US 418; *Jackson v Indiana,* 406 US 715; *Specht v Patterson,* 386 US 605).

In deciding what procedural safeguards are mandated by due process, we begin with the observation that there is no essential distinction to be made between the confinement which often follows as a consequence of one's having been convicted of a serious crime, and the confinement which follows as a consequence of one's having been found to be mentally ill and dangerous. While differences in the character of the confining institution or in the purposes of the confinement may exist, the degree of interference with personal

liberty inherent in the confinement is essentially the same, whether the confinement be classified as civil or criminal.

The United States Supreme Court, in *In re Gault* (387 US 1, 50), rejected what it called the " 'civil' label-of-convenience" and held that certain of the rights afforded to criminal defendants under the United States Constitution should, as a matter of due process, apply in the context of State juvenile delinquency proceedings. Even before *Gault* was decided, our Court of Appeals held that juvenile delinquents were entitled to due process protection *(Matter of Gregory W.,* 19 NY2d 55). In that case, the court quoted with approval from the Report of the Joint Legislative Committee on Court Reorganization (Jan. 30, 1962, at 8) to the effect that " '[a]ny commitment—whether "civil" or "criminal", whether assertedly for "punitive" or "rehabilitative" purposes—involves a grave interference with personal liberty'." *(Matter of Gregory W., supra,* at 62). Thus, both a committee of the Legislature and the Court of Appeals have expressly rejected the notion that a particular question as to the scope of due process can be decided upon the basis of whether the proceeding by which the State seeks to deprive a person of liberty is nominally "civil" or "criminal". This approach to questions of due process has been aptly described by the Supreme Court as "wooden" *(McKiever v Pennsylvania,* 403 US 528, 541). It would, however, be equally inflexible to suggest that since confinement to a State mental hospital is a form of imprisonment, all protections afforded by the bill of rights to a criminal defendant must, as a matter of due process, be likewise afforded to a person thought to be dangerously mentally ill. It is pursuant to such a facile approach that the plaintiffs argue, on appeal, as they did in the court of first instance, that they have the right to remain silent at any prehearing psychiatric interview. This contention is without merit.

The Fifth Amendment privilege against self-incrimination, which applies to the States through the Fourteenth Amendment, provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself" (US Const 5th, 14th Amends) and it permits an individual to refuse to testify against himself, not only at a criminal trial in which he is a defendant but also in any proceeding, civil or criminal, where the answers might thereafter be used to incriminate him *(Minnesota v Murphy,* 465 US 420, 426, *reh denied* 466 US 945).

The question of the application of the privileges against self-

incrimination in relation to proceedings resulting in involuntary civil confinements was recently addressed by the Supreme Court in *Allen v Illinois* (478 US —, 106 S Ct 2988). *Allen* involved a proceeding to determine whether a defendant who had engaged in criminal conduct was in need of involuntary care and treatment as a sexually dangerous person. There, the court explicitly stated that if the proceeding for which the statement was being elicited is not criminal within the meaning of the Fifth Amendment, then "due process" does not independently require application of the privilege against self-incrimination *(Allen v Illinois,* 478 US —, —, 106 S Ct 2988, 2995, *supra).* In reaching its conclusion that the Illinois proceeding was not criminal in nature, the court looked first to the language of the Illinois statute which decreed the proceeding to be civil. Recognizing, however, that the civil label is not dispositive of the issue, the court looked to the purpose of the proceeding to determine whether, in spite of the avowed purpose being to provide treatment, the scheme was so punitive in nature as to render it criminal. In finding that the petitioner had failed in his burden of showing such a punitive purpose, the court specifically rejected an argument based upon sweeping language in *Gault (supra)* to the effect that no person shall be compelled to be a witness against himself when threatened with a deprivation of liberty. Terming this language from *Gault* to be "not good law", the court ruled that the mere confinement does not per se bring the Fifth Amendment into play *(Allen v Illinois,* 478 US —, —, 106 S Ct 2988, 2994, *supra).*

■ The analysis in *Allen (supra)* is particularly apt here. It is clear that facially the involuntary commitment proceedings under the Mental Hygiene Law are civil and not criminal in nature. Furthermore, upon an examination of the statutory scheme, it is equally apparent that the over-all purpose of the proceedings, including the prehearing interview, is to ensure that patients receive the care and treatment that is necessary based upon their condition and is not for the purpose of exacting punishment. We can determine no punitive purpose to the proceedings. Further, as is made clear in *Allen* in its rejection of the broad language in *Gault (supra),* the mere fact that statements adduced during the interview will be used at a hearing, which may result in confinement and a deprivation of liberty, will not suffice to convert the nature of the proceeding from civil to criminal. Continued confinement for purposes of treatment does not constitute punishment and the determi-

nation of the need for such confinement is not the equivalent of a criminal finding of guilt. As was stated by the United States District Court for the Eastern District of New York in *Project Release v Prevost* (551 F Supp 1298, 1308, *affd* 722 F2d 960): "Psychiatric examinations are not the equivalent of criminal interrogations. Their primary purpose is diagnosis and the development of treatment goals, not the marshalling of 'incriminating' evidence. A patient's statements are not admitted 'against' him at a commitment hearing [where] * * * the sole intent * * * is to ascertain the patient's needs". Indeed, the court in *Project Release* noted that instructing a patient to remain silent "would needlessly undermine valid mental health objectives" *(Project Release v Prevost*, 551 F Supp 1298, 1308, *supra; see also, French v Blackburn*, 428 F Supp 1351, *affd* 443 US 901; *Tippett v State*, 436 F2d 1153, *cert granted sub nom. Murel v Baltimore City Criminal Ct.*, 404 US 999, *cert dismissed sub nom. Murel v Baltimore City Criminal Ct.*, 407 US 355). For these reasons, we agree with Special Term that the plaintiffs have no Fifth Amendment right to remain silent during the prehearing interviews.

We turn then to the question of whether the plaintiffs have a right to have counsel present during a prehearing psychiatric examination conducted for the purpose of having the examining psychiatrist thereafter testify at a judicial retention hearing.

Initially, we must determine whether plaintiffs have a statutory right under the Mental Hygiene Law to counsel during the conduct of such examinations. It is clear that the Legislature, by providing for the existence of the Mental Health Information Service (Mental Hygiene Law former § 29.09; L 1972, ch 251), intended to ensure that patients be afforded legal representation in their dealings with mental health facilities in proceedings in which their liberty was at stake. In 1985, the Legislature established the Mental Hygiene Legal Service (Mental Hygiene Law art 47; L 1985, ch 789) to replace the Mental Health Information Service *(see,* Mental Hygiene Law former § 29.09), which had been in existence at the time this action was commenced, and charged it with the responsibility, *inter alia:*

"(b) [t]o inform patients or residents * * * of procedures for admission and retention and of the patients' or residents' right to have judicial hearing and review, to be represented by legal counsel * * *

"(c) [t]o provide legal services and assistance to patients or residents and their families related to the admission, retention, care and treatment of such persons [and] * * *

"(d) [t]o be granted access at any and all times to any hospital, school or alcoholism facility or part thereof, and to all books, records and data pertaining to any such facility deemed necessary for carrying out its functions, powers and duties" (Mental Hygiene Law § 47.03).

In conjunction therewith, Mental Hygiene Law § 9.07 (a) mandates that "[i]mmediately upon the admission of any patient to a hospital or upon his conversion to a different status, the director shall inform the patient in writing of his status, including the section of this chapter under which he is hospitalized, and of his rights under this article, including the availability of the mental hygiene legal service" and further that "[a]t any time thereafter, upon the request of the patient or of anyone on the patient's behalf, the patient shall be permitted to communicate with the mental hygiene legal service and avail himself of the facilities thereof". Thus, it can be seen, the mandate of the Mental Hygiene Legal Service is a broad one, and the Legislature has taken steps not only to provide for this wide-ranging service, but to ensure that patients are aware of and given an opportunity to avail themselves of the service, at various points during their period of hospitalization.

Obviously, one of the most crucial times involved occurs when a decision is made by a hospital to retain a patient against his or her will and legal proceedings are commenced toward that end. Under Mental Hygiene Law § 9.33, when the director of a psychiatric hospital decides to apply to the court for an order authorizing the continued retention of an involuntary patient who it has been determined is in need of retention and who does not agree to remain as a voluntary patient, he must give written notice of the application to the patient and also serve copies thereof personally or by mail upon the persons required to be served with notice of such patient's initial admission (see, Mental Hygiene Law § 9.29) and to the Mental Hygiene Legal Service (see, Mental Hygiene Law § 9.33 [a], [d]). That notice must state that a hearing may be requested and that the failure to make a request for a hearing within five days of the date of notice to the patient shall permit entry of a retention order without a hearing (Mental Hygiene Law § 9.33 [a], [d]). Where the patient or anyone on his behalf demands a hearing, or the Mental

Hygiene Legal Service requests a hearing, the director must forward the request to the court in which the application is filed and to the Mental Hygiene Legal Service. The court must fix the date for the hearing no later than five days after it receives notice of the request (Mental Hygiene Law § 9.31 [a], [b], [c]; § 9.33 [c]).

█ Given the comprehensive statutory provisions enacted to ensure that once an application for a judicial retention order is filed a patient is informed of and given an opportunity to have legal representation if he so desires, we fail to see how, absent a sound reason, a patient can be denied an opportunity to have his or her legal representative present, either actually or constructively, during the conduct of activities which are directly related to those legal proceedings. It must be emphasized that the prehearing examinations which are in question here are not examinations related to treatment, but rather those in which the interview is conducted solely for the purpose of preparing the examining psychiatrist for his testimony at the hearing.

A useful analogy may be drawn to the right of a parent to have counsel present during a psychiatric examination held in connection with a proceeding to terminate parental rights by reason of mental illness pursuant to Social Services Law § 384-b. In *Matter of Alexander L.* (60 NY2d 329, *mot for clarification denied* 61 NY2d 984), the Court of Appeals held that a parent who is to be examined by a court-appointed psychiatrist in a proceeding to terminate his or her parental rights on account of mental illness, has a right to have counsel present during the examination if they so desire in the absence of a demonstration as to how such presence would impair the validity and effectiveness of the examination. In so holding, the court declined to reach the parent's assertions of a constitutionally protected right to counsel in this situation, finding instead that "[i]t is sufficient to observe that there was withheld from [the parent] the right, expressly conferred by the Legislature in its adoption of section 262 (subd [a], par [iv]) of the Family Court Act in 1975 (L 1975, ch 682, § 2), to have her counsel present from the time of her appearance in the termination of parental rights proceeding" *(Matter of Alexander L., supra,* at 335). Family Court Act § 262 (a) (iv) provides simply that certain persons—including the parent of a child in a proceeding under Social Services Law § 384-b—have the right to assistance of counsel and shall be so informed by the court. Surely this language cannot be said to be any broader

in the scope of its protections than the very expansive language used under the Mental Hygiene Law to ensure to patients the right to be informed of and to avail themselves of legal representation in, among other things, retention hearings.

Thus, we find that in providing a right to counsel to patients, the Legislature intended that in the absence of any showing that counsel's presence would interfere with the psychiatric examination, counsel should be permitted to observe either directly or indirectly these prehearing psychiatric examinations held following the commencement of proceedings to obtain a judicial retention order.

Were we not to find, however, that a statutory basis exists for allowing the· presence of counsel at preretention hearings, we would be prepared, nonetheless, to conclude, as did Special Term, that it is required by due process. As outlined above, the procedures pursuant to which the plaintiffs are each threatened with continued involuntary confinement must be scrutinized under standards of due process. The courts have repeatedly commented on the vagueness of the term "due process" and on the flexibility with which it is applied (see, e.g., Morrissey v Brewer, 408 US 471, 481). Both the interests of the State and that of the aggrieved individual must be defined and assessed. The elements of the State's purpose must be preserved, and "no more restrictions should be imposed than are imperative to assure the proceedings' fundamental fairness" (In re Gault, 387 US 1, 72, supra [Harlan, J., concurring in part and dissenting in part]). A definitive procedural safeguard is required by due process only when the absence of such a safeguard would thwart the individual's right to a fair and just hearing (see, Snyder v Massachusetts, 291 US 97, 107-108).

Applying these standards to the case under review, we find that the plaintiffs have advanced a cogent argument as to how the fundamental fairness of their retention hearings is undermined by the refusal of the defendants to allow counsel to observe prehearing examinations. Permitting counsel to observe at such examinations would serve to assist the plaintiffs' attorneys in preparation for retention hearings and, thus, enhance the reliability of such hearings as to the truth-finding functions. In commenting on the comparable statutory right of a parent to the presence of counsel at psychiatric examinations held in connection with proceedings to terminate parental rights, referred to above, the Court of Appeals took note of

the "advantages for trial purposes that would be expected to attend the attorney's presence during this critical phase of the litigation" *(Matter of Alexander L.,* 60 NY2d 329, 336, *supra).* The advantages to be gained from allowing counsel to observe the prehearing examinations to be held in this case are clear and the defendants have, for their part, failed to show any substantial countervailing disadvantage. Assuming that the State's purpose is, as the defendants insist, to treat only those patients in need of treatment, then the observation by an advocate for the patient at critical prehearing psychiatric examinations cannot conceivably impair the achievement of that purpose.

It was for virtually identical reasons that the Supreme Court in *United States v Wade* (388 US 218) held that a criminal defendant is entitled to the presence of counsel at a postarraignment lineup. The court reasoned that an accused has the right, under the Sixth Amendment, to the assistance of counsel in his defense, and that such right "guarantee[s] that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial" *(United States v Wade, supra,* at 226). In *Wade,* the court found that the absence of an attorney from a postarraignment lineup impairs the defendant's ability to cross-examine the State's witnesses on the subject of identification. By like reasoning, in the case at bar, the absence of counsel from these prehearing examinations would substantially impair the basic procedural right of the plaintiffs to cross-examine the State's expert psychiatrist.

For all the foregoing reasons, we hold that an involuntarily committed mental patient who exercises his right to a hearing on the issue of whether the continuation of his confinement may legally be allowed, and who is compelled to undergo a psychiatric examination in preparation for such a hearing, has the right to have an attorney observe the examination. This right may, of course, be waived. Further, we would emphasize that the patient's right extends only so far as necessary to preserve the fairness of the subsequent hearing. Accordingly, the only right is to have counsel observe and there is no right to the participation or assistance of counsel. An attorney, or any third party, who interferes in any way with the conduct of such examination may rightly be excluded *(see, Matter of Alexander L.,* 60 NY2d 329, *supra).* We would note, in this regard, that we find that the restrictions and

conditions imposed by Special Term upon the exercise of this right, and to which plaintiffs apparently have no objection, to be reasonable and consistent with our holding.

Accordingly, the judgment should be modified to provide relief only to the plaintiffs themselves, and, as so modified, the judgment should be affirmed insofar as appealed from.

MOLLEN, P. J., NIEHOFF and KOOPER, JJ., concur.

Ordered that the appeal from the order is dismissed, without costs or disbursements (see, Matter of Aho, 39 NY2d 241, 248); and it is further,

Ordered that the judgment is modified, on the law, by deleting from the last decretal paragraph thereof the words "to any interview" and substituting therefor the words "to interviews of the plaintiffs"; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.