OPINION OF THE COURT
Robert A. Lifson, J.
Counsel for John Campbell, a patient admitted to Pilgrim Psychiatric Center (hospital), moves by order to show cause dated February 13, 1998 (Baisley, J.), for an order permitting counsel for said patient to record by voice tape the entirety of the interview/examination of said patient to be conducted by the hospital’s forensic psychiatrist and for other relief. The *60 hospital opposes the motion. This application appeared on the motion calendar in Special Term Part VII on March 6, 1998, when the undersigned presided in said part, at which time the motion was adjourned to March 10, 1998. However, pursuant to a telephone conference call with the court and counsel for both sides on March 12, 1998, both parties were afforded the opportunity to present further papers upon this application on or prior to March 16, 1998, on which date the motion was deemed finally submitted for decision.
The circumstances giving rise to this application are as follows. At an appearance on January 30, 1998, the court appointed a psychiatrist to examine the patient, Mr. Campbell. Counsel for the hospital informed the patient’s counsel that he intended to have Mr. Campbell examined by Dr. Kanji, the hospital’s forensic expert. While counsel for the hospital agreed to have the patient’s counsel present to observe the examination by Dr. Kanji, he did not consent to the request by patient’s counsel for the voice tape recording of the psychiatric examination of the patient. The hearing on the hospital’s petition for retention of the patient is presently scheduled for March 27, 1998.
Movant relies herein upon Ughetto v Acrish (130 AD2d 12, 25 [2d Dept 1987]), which holds that an involuntarily committed mental patient “who exercises his right to a hearing on the issue of whether the continuation of his confinement may legally be allowed, and who is compelled to undergo a psychiatric examination in preparation for such a hearing, has the right to have an attorney observe the examination”. Movant’s counsel requests that this court permit voice taping relying upon the due process rationale expressed by the Ughetto Court, further relying upon Ughetto for the proposition that “the State must affirmatively establish a ‘substantial countervailing disadvantage’ (Ughetto, supra.)” (see, affirmation of Murray B. Schneps, dated Feb. 11, 1998, at 5) will result from the proposed voice taping. Furthermore, movant contends, in essence, that the objective record created by the proposed taping is consistent with the court’s concern, as expressed in Ughetto, with “enhancing] the reliability of the truth-finding function of the hearing” and protecting the patient’s basic procedural right to cross-examination (affirmation of Murray B. Schneps, dated Mar. 5, 1998, alluding to Ughetto v Acrish, supra).
With respect to movant’s expressed concern regarding creation of “an indisputable record” of the interview/examination (affirmation of Murray B. Schneps, dated Mar. 5, 1998, at 3),
*61 this court notes the detailed analysis of the issue by another Justice of this court. Justice Cannavo, in Mosel v Brookhaven Mem. Hosp. (134 Misc 2d 73, 76 [Sup Ct, Suffolk County 1986]), a case involving, inter alia, the issue of whether the physical examination of an “incompetent” plaintiff would be videotaped, observed as follows: “If only the attorney for the plaintiff were present at the examination and a controversy arose concerning the manner in which the examination had been conducted and its efficacy, the attorney for the plaintiff might be forced into the difficult position of being compelled to testify concerning the conduct of the examining physician because the incompetent plaintiff would not have the capacity to testify in his own behalf. The New York Code of Professional Responsibility requires that the attorney who is confronted with such a situation must then withdraw from the case since he may be forced to argue his own credibility before the trier of the facts (Pulichino v Pulichino, 108 AD2d 803; Code of Professional Responsibility, DR 5-101 [B]; 5-102 [A]). It would be unfair to place a plaintiff in the position of possibly losing his competent and able attorney at a critical time in the lawsuit. In addition, the prosecution of his matter would be probably delayed.” The Mosel court permitted the videotaping of the exam which plaintiff requested. Herein, there is no indication that the hospital’s attorney would be attending the examination, and the only persons to be present for same would be the patient, his counsel and Dr. Kanji. It is possible, therefore, that without a reliable, independent record of the interview/examination being available in this case, patient’s counsel herein (as in Mosel v Brookhaven Mem. Hosp., supra) might be “forced into the difficult position of being compelled to testify concerning the conduct of the examining physician because the incompetent plaintiff would not have the capacity to testify in his own behalf’ (Mosel v Brookhaven Mem. Hosp., supra, at 76), a circumstance that can be safeguarded against by the court permitting that as true a record of the interview/examination as possible be made.
Although counsel for the hospital alleges that voice taping would be intrusive, no direct proof by any forensic expert is offered by the hospital to establish that voice taping would be intrusive or any other disadvantage which might counterbalance considerations of the patient’s right to due process* (see, Mosel v Brookhaven Mem. Hosp., supra, at 76, where the court *62 further stated: “The court cannot see how videotaping the examination would inhibit the examining physician from performing any legitimate test on [plaintiff], particularly when there are no allegations contained in any affidavit by a physician or anyone else indicating that videotaping would be intrusive to an examining physician”).
In the absence of proof by the examining (or other) expert to establish that taping would be intrusive or would otherwise interfere with or undermine the examination of the patient, the patient’s due process rights must prevail (Ughetto v Acrish, 130 AD2d 12, supra). Based on the papers presented the hospital has failed to establish a “substantial countervailing disadvantage” to the advantage to be had in safeguarding the patient’s constitutional right to due process. However, this court finds and concludes that only videotaping will give a sufficient, accurate portrayal and record of the interview/ examination. In this case, videotaping will achieve a balance between the competing needs of the parties to conduct the exam and to preserve an accurate record for the subsequent legal proceeding. The court shall permit the videotaping of the patient’s psychiatric examination subject to the same operational safeguards concerning the conduct of such taping which were established by the Mosel court. Parenthetically, as also noted by Justice Cannavo in Mosel, the determination approving the videotaping does not constitute a “determination of the admissibility of any such videotape” (Mosel v Brookhaven Mem. Hosp., supra, at 77) if it is sought to be introduced at the hearing.
In reaching its conclusion herein, this court has considered the decisions of the First and Third Departments (respectively) in Savarese v Yonkers Motors Corp. (205 AD2d 463 [1st Dept 1994]) and Lamendola v Slocum (148 AD2d 781 [3d Dept 1989]). However, the factual contexts of those personal injury cases are distinguishable from the matter at bar which involves (as did Ughetto v Acrish, supra, and Mosel v Brookhaven Mem. Hosp., supra) the rights of an impaired or incompetent person, or one alleged to be so.

 Ughetto v Acrish (supra) was most recently cited in Matter of Jerome G. (201 AD2d 562 [2d Dept 1994]).