OPINION OF THE COURT
Raymond E. Cornelius, J.
This case presents the not unusual conflict between the position of health and social professionals, who request that a guardian be appointed and believe that the best interests of the respondent would be served by admission to an adult care facility, and the wishes of the respondent, who opposes appointment of a guardian and wants to return to her home.
On October 17, 1995, this court signed an order directing the respondent to show cause why a guardian should not be appointed for the purposes of providing for her personal needs and management of her property. The court also appointed an attorney for the respondent, under authority of Mental Hygiene Law § 81.10. Pursuant to the provisions of Mental Hygiene Law § 81.07 (a) (1) and § 81.13, the order to show cause was made returnable and a hearing held within 28 days from the filing of the petition.
The respondent, Ethel Jacobs, is 95 years of age, having been born on Christmas Day 1899. She has resided, since 1991, with her sole surviving child, Robert Jacobs, and her daughter-in-law, who are 73 and 74 years of age, respectively. This family has lived in an apartment, above a store, in a building owned by Mr. Jacobs, and the respondent had her own room, which was opposite from the kitchen and has been equipped, by her son, with a bell and cord in order to summon assistance. The *768 testimony indicated that the respondent enjoyed watching ball games and country and western dances on television in her room, and visited with friends and relatives who frequented the apartment. The respondent, herself, testified that she enjoyed seeing her grandchildren, as well as having pets in the home. Although the apartment is on the second floor of the building, there is an open porch on the same level, which has been utilized by Mrs. Jacobs. The evidence further indicated that the daughter-in-law has assumed the responsibility of giving sponge baths to Mrs. Jacobs, as well as administering necessary medications.
The petitioner is the Chief Executive Officer of F. F. Thompson Health Systems, Inc., which operates F. F. Thompson Hospital, where Mrs. Jacobs was admitted by her daughter-in-law on July 19, 1995. The proof indicated that Mrs. Jacobs was suffering from severe dehydration, and was quite dirty, with evidence of recent incontinence, and also suffering from poor oral hygiene. This was the third admission for the respondent within the past 14 months. In May 1994, she had been admitted with severe heart failure, and readmitted in December 1994 with the same symptoms because she had not been taking prescribed medication. There was some indication that there may have been a misunderstanding concerning the medications to be given to the respondent, but in any event, as of July 1995, the proof indicated that she had been administered the prescribed medications.
The respondent’s treating physician testified that his patient suffered from senile dementia. This was confirmed by one of the hospital psychiatrists, who had examined her on July 28, 1995, and was called as a witness, at the hearing, by counsel for the respondent. As a result, she suffers from cognitive impairments, the consequences of which include lack of recent memory, as well as confusion concerning her whereabouts and date. The psychiatrist testified that, in his opinion, the respondent’s cognitive impairment resulted in her inability to make decisions for herself and to assess risks. In addition to severe ventricular heart failure, the treating physician testified that the respondent suffers from chronic renal insufficiency, but her prognosis is generally good and she is medically stable because of prescribed medications including a diuretic and medication for her heart problems. Also, she is sometimes incontinent, and ambulates with the assistance of a walker.
In addition to the foregoing, there are several other facts which should be noted for purposes of making a final determi *769 nation in this matter. First, following the respondent’s second admission to the hospital, a referral was made to the Adult Protective Services of the Ontario County Department of Social Services. Also, between December 1994 and March 1995, home health services were provided by the Finger Lakes Visiting Nurse Service. In regard to the issue of property management, Robert Jacobs testified that he had exercised a power of attorney, which had been granted to him by his mother. Pursuant thereto, he makes payment for medical insurance and prescriptions, as well as other expenses, based upon monies received and deposited from Social Security. Furthermore, he testified that at one point he recovered monies from the State of New York, which had been contained in the savings account but deemed abandoned as a result of inactivity. However, Mr. Jacobs is also under investigation by the local District Attorney’s office for possible criminal charges, based upon the physical condition of his mother when admitted to the hospital in July 1995.
The standard for appointment of a guardian is contained in Mental Hygiene Law § 81.02. In essence, a court is authorized to appoint a guardian for a person only based upon a determination "that the appointment is necessary to provide for the personal needs * * * and/or to manage the property and financial affairs of that person”, and secondly, that the person either agrees to the appointment, or alternatively, "that the person is incapacitated”. (Mental Hygiene Law § 81.02 [a] [1], [2].) The term "incapacity” is defined in Mental Hygiene Law § 81.02 (b), and consists of a determination that the person is likely to suffer harm because of the following:
"1. the person is unable to provide for personal needs and/or property management; and
"2. the person cannot adequately understand and appreciate the nature and consequences of such inability.”
The court is further mandated by Mental Hygiene Law § 81.02 (c) to consider certain factors in reaching the determination of incapacity. The court is required, by this subdivision, to give primary consideration to the functional level and functional limitations, in regard to assessment of four factors, three of which relate to activities of daily living. In addition, the statute requires the court to make an assessment of four additional factors, which encompass the extent of demands placed on the person by their personal needs, property and financial affairs, any physical illness, any mental disability, and the effect of any medications upon the person’s behavior, *770 cognition and judgment. Finally, Mental Hygiene Law § 81.02 (d) directs the court to consider all other relevant facts and circumstances, specifically regarding the following: (1) functional level; and (2) understanding and appreciation of the nature and consequences of his or her functional limitations.[1]
In the pending case, consideration of all the factors contained in Mental Hygiene Law § 81.02 leads to the conclusion that Mrs. Jacobs is incapacitated, as the Legislature has attempted to define that term in the statute.[2] This determination is based upon clear and convincing evidence, which is the quantum of proof required for a finding of incapacity, as provided in Mental Hygiene Law § 81.02 (b) and repeated in Mental Hygiene Law § 81.12 (a). (See, Matter of Hammons, 164 Misc 2d 609 [1995].) However, in reaching this conclusion, the court has not considered one portion of the Department of Social Services’ record which had not been received into evidence because the court sustained an objection to the offer of such exhibit. The caseworker, who identified this exhibit, as well as other portions of the social services’ record, testified that the document consisted of information derived from the Visiting Nurse Service and a police investigator, neither of whom had a duty to report to her agency. She also stated that although the Visiting Nurse Service had provided home health care services to Mrs. Jacobs for a period of time, this had not been done pursuant to a contract with the Department of Social Services.
Mental Hygiene Law § 81.12 (b) provides that "the court may, for good cause shown, waive the rules of evidence.” There appears to be a common misconception, based upon this court’s *771 experience, that the Legislature has therefore relaxed the rules of evidence in proceedings commenced under article 81. However, the Law Revision Commission comments make clear that this was not necessarily the intention of the section. As noted by the Commission, "[t]he applicability of the rules of evidence underscores the serious nature of a guardianship proceeding and the protections that should be afforded to a person who is the subject of such a proceeding”. (Law Rev Commn Comments, reprinted in McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.12, 1995 Pocket Part, at 326.) This court interprets the additional Commission comments, under section 81.12, to reflect an intent that the waiver provisions only apply in uncontested proceedings, which, for example, would include a proceeding in which a respondent consents to the appointment of a guardian. In the pending case, the offered exhibit would not have been admissible in evidence as a business record, and, therefore, an exception to the hearsay rule, under CPLR 4518 (a), because the knowledge of the entrant was not based upon information obtained from a declarant under a business duty to report the information. (See, Cover v Cohen, 61 NY2d 261 [1984]; Matter of Leon RR, 48 NY2d 117 [1979]; Johnson v Lutz, 253 NY 124 [1930]; People v Morrow, 204 AD2d 356 [2d Dept 1994]; Hatton v Gassler, 219 AD2d 697 [2d Dept 1995].)
As aforementioned, in addition to a finding of incapacity, a court must determine whether the appointment of a guardian is necessary to provide for the personal or property needs of a person before such appointment. Specifically, Mental Hygiene Law § 81.02 (a) (1) directs that consideration of the personal needs include food, clothing, shelter, health care or safety, which are also the examples of "personal needs” contained in Mental Hygiene Law § 81.03 (f). Mental Hygiene Law § 81.02 (a) (2) directs that one factor, to be taken into consideration, is the sufficiency and reliability of available resources to provide for personal needs or property management without the appointment of a guardian. The term "available resources” would include visiting nurses, home health aides, and powers of attorney. (Mental Hygiene Law § 81.03 [e].) As an alternative to the appointment of a guardian, Mental Hygiene Law § 81.16 (b) further provides, in relevant part, as follows: "Protective arrangements and single transactions. If the person alleged to be incapacitated is found to be incapacitated, the court without appointing a guardian, may authorize, direct, or ratify any transaction or series of transactions necessary to achieve any *772 security, service, or care arrangement meeting the foreseeable needs of the incapacitated person, or may authorize, direct, or ratify any contract, trust, or other transaction relating to the incapacitated person’s property and financial affairs if the court determines that the transaction is necessary as a means of providing for personal needs and/or property management for the alleged incapacitated person.” This same section authorizes a court to appoint a special guardian to assist in the accomplishment of any protective arrangement or other transaction.
In the pending case, there was no evidence that Mrs. Jacobs’ son has not acted responsibly in exercising the power of attorney to the extent of managing his mother’s financial affairs and otherwise preserving her meager assets. The court has also concluded that neither Mr. Jacobs, nor his wife, have engaged in intentional behavior injurious to the respondent’s health, and indeed, have exhibited love and affection for her. It is also apparent, however, that they may require some assistance in maintaining proper hygiene for Mrs. Jacobs, and arranging proper medical services. Although they may be criticized for failing to seek prompt medical attention in the past, Mr. Jacobs and/or his wife have been the persons responsible for the prior hospital admissions. It should also be noted that during the most recent admission in July 1995, when Mrs. Jacobs was diagnosed as suffering from severe dehydration, parts of the Nation were experiencing extremely high temperatures and many elderly people suffered consequences because of lack of proper ventilation and/or fluids.
Social Services Law § 473 (1) places responsibility upon social services officials to provide certain adult protective services. Specifically, such officials must provide protective services, which include arranging medical services to individuals "who, because of mental or physical dysfunction, are unable to manage their own resources, and carry out the activities of daily living, or protect themselves from neglect or hazardous situations without assistance from others and have no one available who is willing and able to assist them responsibly” (emphasis added). It should be mentioned that in other proceedings, held before this court, the last part of this provision has been injected into legal arguments on the question whether social services officials can be required to serve as guardians.
Generally, Mrs. Jacobs’ son and daughter-in-law are willing and able to assist her, and could be considered as "available resources” under the Mental Hygiene Law. However, in a *773 limited way, they have been unable to maintain proper hygiene, seek prompt medical attention when required, and further, Mr. Jacobs testified that he is unwilling to continue treatment with his mother’s current physician. Accordingly, the court directs that the Commissioner of Social Services for the county be appointed as a special guardian, pursuant to Mental Hygiene Law § 81.16 (b) for the limited purpose of providing adult protective services, pursuant to Social Services Law § 473, in the form of arranging for visiting nurse or other home health care services and arranging regular medical examinations by Mrs. Jacobs’ current physician. Although Mrs. Jacobs’ life could perhaps be extended by placement in an adult care facility, the appointment of a special guardian for these limited purposes will permit her to return to her home and enjoy the quality of life which she has previously experienced with her friends and family.

. It is apparent that the factors, which the court must take into consideration in making a determination of incapacity, are, to some extent, interrelated, and duplicative. For example, the definition of incapacity contained in Mental Hygiene Law § 81.02 (b) (1) and (2) would appear to encompass the definition of "functional level” and "functional limitation”, as contained in section 81.03 (b) and (c). Nevertheless, section 81.02 (c) directs the court, in making a determination of incapacity, to give primary consideration to "functional level” and "functional limitation”, especially as related to an assessment of four factors, including an understanding and appreciation of the nature and consequences of an inability to manage the activities of daily living. Section 81.02 (d) (1) and (2) then directs a consideration of all other relevant facts and circumstances regarding "functional level” and an understanding and appreciation of the nature and consequences of "functional limitation”.

. A person’s preferences, wishes and values with regard to managing the activities of daily living are included as a primary consideration, but it is questionable how this relates to an objective determination of whether that same person is incapacitated, as opposed to determination of an appropriate dispositional alternative.