OPINION OF THE COURT
Eugene E. Peckham, J.
This is a proceeding under article 81 of the Mental Hygiene Law for the appointment of a guardian of the person and property of A.G., an alleged incapacitated person (AIP). A.G. did not answer the petition, take any steps to place his condition affirmatively in issue, call any witnesses or waive any of his civil rights or privileges. The petitioner is United Health Services Hospitals, Inc. (UHS), and the proposed guardian is the Broome County Commissioner of Social Services. Mental Hygiene Legal Service was appointed by the court as counsel for the AIP
At the trial petitioner called a discharge planner at UHS who testified that since March 2003, A.G. had been admitted to the hospital over 25 times and had signed himself out against medical advice 16 times. Petitioner also called a registered nurse and case manager who confirmed some of the discharge planner’s testimony, but was prevented from testifying further due to objections on the grounds of the nurse-patient privilege. (CPLR 4504.)
Petitioner next called the AIP as a witness. The AIP’s attorney objected on two grounds: (1) the Fifth Amendment right not to testify when a liberty interest is at stake, and (2) that permitting petitioner to call the AIP would shift the burden of proof that is imposed upon petitioner by Mental Hygiene Law §81.12 (a). The question of whether the Fifth Amendment right to remain silent applies to an article 81 hearing is a matter of first impression in New York.
The Fifth Amendment privilege against self-incrimination is made applicable to the states by the Fourteenth Amendment to the US Constitution. (In re Gault, 387 US 1, 49 [1967].) Article I, § 6 of the New York Constitution contains a similar privilege. This privilege has been incorporated as a rule of evidence in CPLR 4501, which says: “This section does not require a witness to give an answer which will tend to accuse himself of a crime or to expose him to a penalty or forfeiture . . . .”
In an article 81 proceeding, a guardian can be given the power to manage and control the decedent’s property, including pow *449 ers to make gifts, provide support for the AIP and his or her dependents, renounce or disclaim property interests and release confidential records. (Mental Hygiene Law § 81.21.) In addition, a guardian of the person can be given power to decide whether the AIP can have a driver’s license, to make medical decisions for the AIP and to choose the place of abode of the AH’ including the power to place the AIP in a nursing home or residential care facility. (Mental Hygiene Law § 81.22.) The petition in this case requested all of these powers.
There has been great debate over the last 30 years as to whether the Fifth Amendment privilege applies in proceedings for the commitment of a mentally ill person. The United States Supreme Court declined to reach the issue in McNeil v Director, Patuxent Inst. (407 US 245, 250 [1972]). But see Allen v Illinois (478 US 364 [1986]) where the Supreme Court said the right against self-incrimination does not apply in proceedings for commitment of “sexually dangerous persons.” However, in a concurring opinion in McNeil, Justice Douglas argued the privilege should apply.
“Whatever the Patuxent procedures may be called— whether civil or criminal — the result under the Self-Incrimination Clause of the Fifth Amendment is the same. As we said in In re Gault, 387 U. S. 1, 49-50, there is a threat of self-incrimination whenever there is ‘a deprivation of liberty;’ and there is such a deprivation whatever the name of the institution, if a person is held against his will.” (Id. at 257.)
Thereafter, in reliance primarily on Justice Douglas’ opinion, a number of state and federal courts ruled on the issue with the cases going both ways. The cases are collected in 1 Perlin, Mental Disability Law: Civil and Criminal § 2C-4.11 (at 358-364 [2d ed]). Most of these cases involved the question of whether an allegedly mentally ill person could refuse to answer questions in a psychiatric interview for the purposes of the commitment hearing. (E.g. Ughetto v Acrish, 130 Misc 2d 74 [Sup Ct, Dutchess County 1985], mod on other grounds 130 AD2d 12 [2d Dept 1987], appeal dismissed 70 NY2d 871 [1987] [privilege does not apply to prehearing psychiatric interview for a retention hearing under article 9 of the Mental Hygiene Law].)
The precise question presented here is: Can the AIP be called by petitioner to testify against himself in an article 81 guardianship hearing? Matter of Matthews (46 Or App 757, 613 P2d 88 [Ct App 1980]) involved a civil commitment proceeding for a mentally ill person. The Oregon appellate court stated:
*450 “This is an appeal from an order of commitment finding appellant to be a mentally ill person as defined in ORS 426.005 (2). The sole issue on appeal is whether an alleged mentally ill person has a right to remain silent in a civil commitment proceeding. The trial court concluded that the Fifth Amendment privilege did not apply and directed appellant to speak. We affirm.” (46 Or App at 759, 613 P2d at 89.)
On the other hand, Tyars v Firmer (518 F Supp 502 [CD Cal 1981], revd on other grounds 709 F2d 1274 [1983]) held the opposite. The case was a habeas corpus petition by a patient committed to a state mental hospital after a juiy trial. At the trial, the patient was called as an adverse witness by the state prosecutor. Over the objection of his counsel on Fifth Amendment grounds, the trial court nevertheless required him to testify. The Federal District Court held that this was an error saying: “Instead of shouldering the entire load, proving its case by its own independent labors, California violated petitioner’s right to remain silent.” (Id. at 510.) Although the issue is similar, neither of these two cases involved a guardianship hearing.
The leading treatise on guardianship in New York agrees with Tyars and states that the AIP cannot be compelled to testify against his wishes in an article 81 proceeding. “[T]here is no . . . authority under article 81 for the court to compel an unwilling AIP to take the stand to assist the petitioner in establishing incapacity . . .” (1 Abrams, Guardianship Practice in New York State, ch 12, § VI, at 583).
The New York Court of Appeals has repeatedly made it clear that a person retains his or her civil rights in a proceeding where personal liberty is at stake. In Rivers v Katz (67 NY2d 485, 495-497 [1986]), it held:
“We likewise reject any argument that involuntarily committed patients lose their liberty interest in avoiding the unwanted administration of antipsychotic medication . . . We hold, therefore, that in situations where the State’s police power is not implicated, and the patient refuses to consent to the administration of antipsychotic drugs, there must be a judicial determination of whether the patient has the capacity to make a reasoned decision with respect to proposed treatment before the drugs may be administered pursuant to the State’s parens patriae power. The determination should be made at a *451 hearing following exhaustion of the administrative review procedures provided for in 14 NYCRR 27.8. The hearing should be de novo, and the patient should be afforded representation by counsel (Judiciary Law § 35 [1] [a]). The State would bear the burden of demonstrating by clear and convincing evidence the patient’s incapacity to make a treatment decision.”
A few years later in Matter of Grinker (Rose) (77 NY2d 703, 710 [1991]), the Court held under the former conservatorship statute, article 77 of the Mental Hygiene Law, that a conservator of the property did not have power to place an incapacitated person in a nursing home involuntarily. The Court held (at 710):
“Assuming, without deciding, that Mental Hygiene Law § 77.19 authorizes a grant of limited power over a conservatee’s person incidentally related to the primary power over property, we conclude that it clearly does not authorize the potent personal transformation of involuntary commitment of a conservatee to a nursing home. The availability of such a significant involuntary displacement of personal liberty should be confined to a Mental Hygiene Law article 78 incompetency proceeding, with its full panoply of procedural due process safeguards.” (Citations omitted.)
Most recently, our highest court has held that the ATP in an article 81 proceeding has a constitutional right to counsel. The Court said:
“[I]n any proceeding brought pursuant to Mental Hygiene Law article 81 . . .in which the petition seeks powers for a guardian of the person to either place the indigent allegedly incapacitated person (AIP) in a nursing home or other institutional facility, or to make major medical decisions, an indigent AIP is constitutionally entitled to counsel at public expense.” (Matter of St. Luke’s-Roosevelt Hosp. Ctr., 89 NY2d 889, 890 [1996].)
Another similar privilege that is frequently invoked in article 81 proceedings is the privilege of confidential communication between doctor and patient. (CPLR 4504.) The Second Department has recently held that the doctor-patient privilege applies in article 81 proceedings unless the AIP waives the privilege or affirmatively asserts his or her mental condition at trial. (Mat *452 ter of Rosa B.S., 1 AD3d 355 [2d Dept 2003]; accord, Matter of Janczak, 167 Misc 2d 766 [Sup Ct, Ontario County 1995]; Matter of Higgins [England], NYLJ, Oct. 6, 1995, at 27, col 2 [Sup Ct, NY County]; Matter of Tara X., NYLJ, Sept. 18, 1996, at 27, col 1 [Sup Ct, Suffolk County].)
Mental Hygiene Law § 81.12 (b) permits the court for good cause shown to waive the rules of evidence in an article 81 proceeding. However, the courts have repeatedly held that the rules of evidence may only be waived in uncontested proceedings. If the AIP contests the proceeding, the rules of evidence are waived only if the AIP affirmatively places his or her mental condition in issue. (Matter of Rosa B.S., supra; Matter of Tara X., supra-, Matter of Higgins [England], supra-, Matter of Seidner, NYLJ, Oct. 8, 1997, at 28, col 4 [Sup Ct, Nassau County].)
In addition to being a constitutional right, the right to remain silent of the Fifth Amendment is also a rule of evidence in civil proceedings in New York. It is a privilege set forth in CPLR 4501 just as the physician-patient privilege is set forth in CPLR 4504. In this contested article 81 proceeding, A.G. has neither waived his privileges nor affirmatively placed his mental condition in issue. Rather, when called to testify by the petitioner, he asserted his constitutional privilege to remain silent and not testify against himself. In a contested proceeding where the rules of evidence, including the CPLR 4501 privilege, are not waived, he had that right.
In re Gault (supra) held that juvenile delinquency proceedings, even though nominally denominated civil proceedings, could result in placement in an institution with concomitant deprivation of liberty. Thus, the Court held that the Fifth Amendment privilege against self-incrimination applied in those proceedings. Equally as much in article 81 proceedings, the AIP can be deprived of liberty. If the evidence warrants, the guardian can be given the power to place the incapacitated person involuntarily in a nursing home or other institution, to make medical decisions for him or her, including the power to withhold or withdraw life sustaining treatment. (Mental Hygiene Law §§ 81.22, 81.29 [e].)
If patients do not lose their rights to make their own decision regarding administration of antipsychotic drugs, in similar fashion AIP’s should not lose to a guardian their rights to make their own medical decisions. If an AIP has a right to counsel, he or she should also have the right to remain silent on the advice of that counsel. The potential deprivation of liberty in article 81 *453 mental hygiene proceedings is potentially the same as or even more severe than the deprivation of liberty in juvenile cases. In both situations the respondent can be placed in an institution against his or her will. Under article 81, the guardian may even be given the power of life or death, that is, to withhold or withdraw life sustaining treatment. (Mental Hygiene Law § 81.29 [e].) The Fifth Amendment should apply equally in both situations.
It is inherently offensive to our Constitution and due process to require a person to testify against himself or herself in a proceeding where that person’s liberty is at stake. The Fifth Amendment triumphantly says it cannot be done in criminal prosecutions. The Supreme Court has held it cannot be done in juvenile proceedings. {In re Gault, supra.) The same has to be true of proceedings where a person’s life and liberty is at risk due to allegations of mental illness or incapacity. The right not to testify set forth in CPLR 4501 and the Constitution has not been waived. The next step that follows logically from the Court of Appeals decisions in Rivers, Grinker and St. Luke’s is that A.G. has the right to remain silent and refuse to testify against himself in this article 81 proceeding. Due process requires nothing less.
The evidence presented that A.G. has been hospitalized numerous times and has signed himself out of the hospital against medical advice numerous times, standing alone, is not clear and convincing evidence of lack of capacity. The burden of proof is on the petitioner and does not shift to the respondent. It cannot be shifted by calling the AIP as a witness in the petitioner’s case-in-chief. (Tyars v Winner, supra-, Abrams, supra.) Petitioner has not met its burden of proof.
It is therefore the order of the court that the petition be dismissed. The temporary guardianship of A.G. granted to Arthur Johnson, as Commissioner of Social Services, is revoked.