OPINION OF THE COURT
John M. Leventhal, J.
Six of grand rabbi Moses Teitelbaum’s grandchildren,[1] and two grandchildren through marriage from two of the alleged incapacitated person’s (AIP) seven children, seek the appointment of a guardian of the grand rabbi’s person and property. The AIP is the grand rabbi of the Satmar Chassidic Community.
Respondents, the grand rabbi, rabbi Lipa Teitelbaum (a son of the grand rabbi, his designated health care proxy and co-attorney-in-fact) and Moses Friedman (personal secretary and co-attorney-in-fact for the grand rabbi) move pursuant to section 3211 (a) (7) of the CPLR for an order dismissing the proceeding, maintaining that the petition fails to state a cause of action. Petitioners oppose the motion and cross-move pursuant to section 3025 (b) of the CPLR for an order granting amendment of the petition.
The court in deciding these motions has considered all papers submitted to the court.
After due deliberation, the cross motion to amend the petition and the motion to dismiss the pleadings are both granted.
*661 Respondents advance two main arguments in support of dismissal. Respondents first aver that this petition does not assert sufficient specific allegations that an incapacity exists and that a guardian is necessary. Respondents oppose the amendment of the pleadings, but maintain that even if this were permitted, the pleadings remain insufficient. Secondly, respondents argue that even if there is an incapacity, the AIP has designated an attorney-in-fact and a health care proxy, negating any need for a guardian.
Petitioners maintain that the pleadings, both pre- and post-amendment, sufficiently allege an incapacity and the need for the appointment of a guardian. Additionally, petitioners now in their supplemental affirmations submitted in support of their cross motion and in opposition to the motion to dismiss aver that the incapacity existed at the time the AIP nominated an attorney-in-fact and health care proxy.
At an early conference on this matter, counsel for respondents advised that an argument may be advanced that this court did not have jurisdiction over this matter and that it should be heard and decided by a Rabbinical Court. Although not requesting dismissal on this ground, respondents claim that petitioners acted improperly by bringing this guardianship proceeding in a secular court. Respondents maintain that any claims involving the grand rabbi should be brought before a religious court, a Beit Din. Petitioners agree that they too would rather have a Rabbinical Court determine this matter. Petitioners contend that the respondents would not agree to utilize the particular Beit Din that petitioners sought to use to determine this application.
The court will first address the propriety of having an AlP’s capacity determined by a Rabbinical Court. The court’s resolution of this issue may help to alleviate the great acrimony between the parties caused by their inability to agree on a mutually acceptable Beit Din. As this issue is of such significance and may arise again in a future case, a definitive answer is warranted.
Proceeding in a Secular Court
The parties disagree whether under Jewish law this proceeding could be brought in a secular court. Petitioners suggest that they attempted to get the respondents to go to a Beit Din. Interestingly, both sides use different affirmations from the same rabbi to support their arguments.
*662 The court has no intention of interfering with purely religious matters (Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America, 344 US 94 [1952]). However, the issue before this court concerns the capacity of an individual and not a religious matter. Proceeding under Jewish law by agreeing to go before a Beit Din is akin to an agreement to arbitrate a matter. “Arbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced” (Matter of Wertheim & Co. v Halpert, 48 NY2d 681, 683 [1979], overruled on other grounds Fletcher v Kidder, Peabody & Co., 81 NY2d 623 [1993] [based on a change in the discrimination laws following a subsequent United States Supreme Court decision]). Areas of the law that have been found to be nonarbitrable as against public policy are child custody matters (Nestel v Nestel, 38 AD2d 942 [1972] [judicial process is more broadly gauged and better suited where delicate balancing of interests of a child is in issue]), estate distributions (Matter of Jacobovitz, 58 Misc 2d 330 [1968]; Matter of Berger, 81 AD2d 584 [1981]), and criminal violations (Matter of Goldmar Hotel Corp., 283 App Div 935 [1954]).
The Legislature in enacting article 81 of the Mental Hygiene Law, replacing the former article 77, did so in order to provide for the protection of the liberty and the due process rights of an alleged incapacitated person. The Legislature recognized that an individual adjudged incapacitated may suffer a loss of civil rights (Mental Hygiene Law § 81.01). The goal of this act is to promote public welfare by creating a conduit that affords assistance to individuals using the least restrictive form of intervention (Mental Hygiene Law § 81.01). At the same time, article 81 provides the alleged incapacitated person with a full panoply of statutory safeguards and protections.[2]
A finding of capacity or incapacity by an ecclesiastical court would not be binding or enforceable in a secular court (see, e.g. Matter of Berger, 81 AD2d 584 [1981]; Milnes v Salomon Smith *663 Barney, 2002 NY Slip Op 50507[U]). It would be against public policy to allow an ecclesiastical court to offset an individual’s civil rights. A determination of incapacity would result in a restriction or even elimination of one’s civil rights (Mental Hygiene Law § 81.01). The Legislature enacted this section to protect those rights and this court is responsible for ensuring that the intent of the Legislature is carried out. An article 81 proceeding cannot be heard or determined other than by a New York State court.
Accordingly, whether or not the parties were to agree as to whether this matter should be decided pursuant to Jewish law, this article 81 proceeding is properly before this court.
Sufficiency of the Pleadings
Mental Hygiene Law § 81.08 (a) (3) requires that the petition in a guardianship proceeding contain “a description of the alleged incapacitated person’s . . . ability to manage the activities of daily living, behavior, and understanding and appreciation of the nature and consequences of any inability to manage the activities of daily living.” This section further mandates that the petition contain specific factual allegations as to the personal actions (personal need guardian) or financial transactions (property need guardian) or other actual occurrences that demonstrate that the AIP is likely to suffer harm because he cannot adequately understand and appreciate the inability to care for these needs (Mental Hygiene Law § 81.08 [a] [4], [5]). Conclusory allegations without specific factual allegations of an incapacity are insufficient and warrant a dismissal (Matter of Petty, 256 AD2d 281 [1998]). The failure to supply meaningful detailed information and supporting facts in a petition for a guardian, as required by statute, is grounds for dismissal of the petition (Matter of Parker [Onondaga County Dept. of Social Serve.], 162 Misc 2d 733 [1994]).
The petition submitted in this proceeding contains nothing but conclusoiy allegations. It alleges that the AIP is disoriented, requires around-the-clock assistance and is in poor health. It does not contain any factual allegations. Petitioners allege that the grand rabbi is in poor health, yet, there are no claims that he is not receiving proper medical treatment or around-the-clock care. Notably, the petition states that the grand rabbi is being sequestered from certain children and grandchildren. However, the petition makes no mention of a long-standing internal family dispute among the children of the grand rabbi. *664 It does not contain any mention that, as a result of that dispute, there have been numerous lawsuits between the family members which could account for the grand rabbi’s absence from the functions of certain family members. The petition also fails to note that the grand rabbi maintains a public schedule.
The petition avers that the grand rabbi only resides with his wife, a houseboy and his wife’s medical assistant. There is no mention that the grand rabbi has a full staff consisting of a personal secretary, medic, driver and cook in addition to the houseboy/butler. Additionally, there are no factual allegations that the grand rabbi will likely suffer any harm.[3]
This court finds that in addition to the petition’s lack of any specific factual allegations, it also fails to reveal information pertinent to this proceeding and within the knowledge of the petitioners.
The additional affidavits submitted in opposition to the motion to dismiss also fail to raise factual allegations which would warrant a guardianship proceeding. The affirmations do not allege that any of the AIP’s activities of daily living are not being met or that he will suffer harm. These affirmations merely reiterate that the grand rabbi failed to attend events and occasions of particular family members involved in the internal dispute. These affirmations also assert that certain family members are only permitted restricted visits with the grand rabbi, while acknowledging that other family members and even the public in general have more access. Again, this does not demonstrate an incapacity, a likelihood of harm or a need for a guardian. These affirmations established and confirmed that an *665 internal family dispute continues to exist and has existed since at least 1999. A guardianship proceeding is not the proper avenue for a resolution of a family dispute, even when this dispute impacts on the future leadership of the Satmar movement. Thus, the affirmations submitted in opposition to the motion are insufficient to establish the need for the commencement of a guardianship proceeding.
The Health Care Proxy and Power of Attorney
Assuming arguendo that this court were to make a finding of incapacity, there still would be no need to appoint a guardian. A guardian should only be appointed as a last resort when there are no available resources or alternatives available to protect an incapacitated person (Matter of Maher, 207 AD2d 133 [1994]). An individual’s plan for management of his affairs (either personal or property) obviates the need for a guardian (Matter of Albert S., 286 AD2d 684 [2001]; Matter of Crump [Parthe], 230 AD2d 850 [1996]).
Respondents annex to their motion to dismiss a copy of a durable power of attorney and health care proxy executed by the grand rabbi in May 2003. The power of attorney not only grants the powers sought in the guardianship petition to named individuals, but also provides that if the appointment of a guardianship were ever necessary, then those same individuals[4] are listed by the grand rabbi as the persons he would like to serve as guardian.
Petitioners made no mention of these documents in the petition. At oral argument, counsel for petitioners indicated that petitioners may not have been aware of the existence of these documents. However, the reply affidavit of Edwin Kasoff, Esq., contains a letter addressed to the attorney for the father of some of the petitioners advising of the health care proxy. This is also belied by the affirmation of Leon Teitelbaum submitted by petitioners. In this affirmation, Mr. Teitelbaum avers that he spoke of a proxy and power of attorney with the grand rabbi in October 2003. This court notes that during this proceeding, every statement made and everything that has occurred has been conveyed to the members of this religious community and appeared in both the secular and religious media. It is incredible as a matter of law that petitioners would argue that they were not aware of the existence of these documents.
*666 The affirmation of Leon Teitelbaum is the only document submitted by petitioners that directly addresses the capacity of the grand rabbi to execute these documents. Simply, this is insufficient to question the capacity of the grand rabbi to execute these documents.
Petitioners submit affirmations wherein they allege microphones were shut down while the grand rabbi was speaking, and that at times he appeared confused. The affidavits speak of incidences that occurred as far back as 1997. Yet, no application was ever made until 2005. Further, while the petitioners in this particular proceeding may be different from the parties in the prior litigation, the court cannot ignore the fact that the petitioners have a close connection to the litigants in the prior proceedings.
Amendment of the Pleadings
Section 3025 (b) of the CPLR permits a party to move to amend a pleading. Leave to amend should be freely given absent prejudice to the opposing party, unless the amendment is palpably insufficient, or is totally devoid of merit. (AYW Networks v Teleport Communications Group, 309 AD2d 724 [2003].) Respondents have not suggested they will suffer any prejudice if the amendments to the petition are granted. Respondents do argue that the amendments are without merit.
In light of the seriousness of a guardianship proceeding, it is important that the court consider all the allegations raised by petitioners. The court must ensure that the alleged incapacitated person is safe, and that there is no need to proceed any further with this proceeding. Accordingly, in considering the motion to dismiss, this court considered the affirmations submitted by petitioners as if they were contained within the petition. However, even after considering the affirmations, they are still insufficient to defeat the motion to dismiss.
Conclusion
In light of the above, the cross motion to amend and the motion to dismiss are both granted. This guardianship proceeding is dismissed.

. The grand rabbi has 86 grandchildren.

. An alleged incapacitated person has a right to counsel (Mental Hygiene Law § 81.10) at a mandatory hearing (Matter of Hoffman, 288 AD2d 892 [2001]) where the burden of proof is on the petitioner by clear and convincing evidence (Mental Hygiene Law § 81.12) and also where the rules of evidence apply (Matter of Rosa B.-S. [William M.B.], 1 AD3d 355 [2003]). At this hearing, the AIP is entitled to a jury trial (Matter of Panartos, 308 AD3d 350 [2003]) and even though this is a civil proceeding, an AIP may not be compelled to testify nor may an adverse inference be drawn from an AIP’s failure to testify. (Matter of A.G., 6 Misc 3d 447 [2004].)

. The court notes that, on October 31, 2005, upon consent of all parties, this court along with its staff and a Yiddish translator (employed by the Office of Court Administration) visited the grand rabbi at his residence. The court was provided a tour of the grand rabbi’s home. The bedroom of the grand rabbi has a couch which the butler sleeps on to cater to any needs of the rabbi. There is another bedroom in which another individual sleeps that has an intercom system linked to the grand rabbi’s bedroom to provide any additional assistance to the rabbi and butler. The rabbi’s staff was present and consisted of a personal secretary, paramedic, butler (present 24 hours), chauffeur, cook and office attendant.
The house contains an office, study and area to meet with members of the public. There is also a balcony so that he may address large numbers of the congregants during high holy days.
This court observed the rabbi studying and walking. The court also asked the rabbi, outside the presence of his staff, if he was satisfied with the care he was receiving from Moses Friedman and Lipa Teitelbaum. The rabbi responded in the affirmative.

. Lipa Teitelbaum and Moses Friedman are so designated. The court also notes that Moses Friedman was selected by the grand rabbi more than 25 years ago to serve as his personal secretary.