OPINION OF THE COURT
Daniel P. Conviser, J.
This decision addresses what the court believes is an issue of first impression under New York State’s Sex Offender Management and Treatment Act (SOMTA) (Mental Hygiene Law art 10): May the State, during an article 10 trial, compel the respondent to testify as a witness for the State? This court concludes that the answer is no.
Statement of Facts
The respondent, John Suggs, pleaded guilty in 1968 to rape in the first degree and robbery in the first degree, in satisfaction of a number of rape, sodomy, robbery, assault and other charges arising from multiple attacks of women he had allegedly committed in the vicinity of City College in Manhattan. He was sentenced to 5 to 15 years’ incarceration on that plea. After protracted state and federal appeals, however, his guilty plea was invalidated by the grant in Federal District Court of the respondent’s petition for a writ of habeas corpus in 1978. The court found that Mr. Suggs was not mentally competent to enter the guilty plea that had resulted in his conviction 10 years earlier. The District Court’s decision was affirmed by the Second Circuit in Suggs v LaVallee (570 F2d 1092 [1978]). Mr. Suggs was released from prison in 1978.
He remained at liberty for 28 days before being charged with rape again. He was convicted of that rape charge and of robbery in 1978 and received a sentence of 74 months to 20 years’ incarceration. Four years after his release from prison on those charges, he committed another rape. He was convicted of rape in the first degree by forcible compulsion in 1996 and received a determinate sentence of I2V2 years’ incarceration. The State filed a petition for sex offender civil management under article 10 of the Mental Hygiene Law against the respondent on January 28, 2009.
*1011 A SOMTA jury trial commenced on January 18, 2011 and concluded on January 28, 2011. The State presented the testimony of two psychologists, Dr. Stuart Kirschner and Dr. Tricia Petersen, who both opined that the respondent suffered from a mental abnormality under the statute. The respondent presented the testimony of a third psychologist, Dr. Joseph Plaud, who opined that the respondent did not suffer from such a mental abnormality.
Prior to the close of the State’s case, the State moved to call the respondent as a witness. The respondent objected, arguing that the State was not entitled, for a number of reasons discussed infra, to call him against his will at an article 10 proceeding. The State had earlier alerted the court and the respondent that they might be moving to call the respondent as a witness and the court had previously heard legal arguments on the issue. On January 26, 2011, the court denied the State’s motion to call the respondent as a witness, stating a written decision would follow. The instant decision contains the court’s conclusions on the issue. On January 28, 2011, the jury returned a unanimous verdict finding that the respondent suffered from a mental abnormality. The respondent was ordered to continue to be confined in a secure treatment facility and a hearing to determine whether the respondent should be confined or placed on a regimen of strict and intensive supervision and treatment under the statute is now pending.
Conclusions of Law
In the court’s view, there are five constitutional and statutory provisions which are relevant to the instant question:
-The Fifth Amendment to the United States Constitution;
-Article I, § 6 of the New York State Constitution (the state analogue to the Fifth Amendment);
-CPLR 4512, entitled “Competency of interested witness or spouse”;
-CPLR 4501, entitled “Self-incrimination”; and
-Article 10 of the Mental Hygiene Law.
As discussed infra, although questions closely related to the one here have been the subject of disagreement among state and federal courts over the past 30 years, there is no clear right against self-incrimination in SOMTA proceedings which can be derived from the Federal or State Constitution or the CPLR. *1012 The language of article 10 itself, however, in the court’s view, indicates that the Legislature did not intend to allow the State to call SOMTA respondents as witnesses for the State over a respondent’s objection. The relevant constitutional and statutory provisions outside article 10 are first examined here. Following that discussion, the provisions of article 10 itself which are relevant to the question are reviewed.
The Fifth Amendment to the United States Constitution
The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution which is applicable to the states by virtue of the 14th Amendment provides that no person “shall be compelled in any criminal case to be a witness against himself.” In Allen v Illinois (478 US 364 [1986]), the United States Supreme Court considered whether proceedings under the Illinois “Sexually Dangerous Persons Act” were criminal within the meaning of the Fifth Amendment’s guarantee against compulsory self-incrimination. The Illinois statute defined sexually dangerous persons as those suffering from certain defined mental disorders and criminal propensities towards the commission of sexual offenses. The trial court ordered the defendant to submit to two psychiatric examinations and then allowed psychiatric opinions derived from those examinations to be used at a trial in which the defendant was found to meet the criteria defined by the statute. The defendant challenged the finding arguing that these compulsory psychiatric examinations violated his privilege against self-incrimination.
In a 5-4 majority opinion authored by Justice Rehnquist, the Court held that those proceedings were not criminal and that the privilege against mandatory self-incrimination did not apply to them.[1] The Court held that the question of whether a particular proceeding is criminal for purposes of the Fifth Amendment’s Self-Incrimination Clause is first a question of statutory construction. To answer that question, it must be determined whether the statute on its face is ostensibly a civil or a criminal proceeding. The Court held the Illinois statute was designated as a civil statute. In such cases, the Court explained, in order to *1013 be deemed a criminal proceeding, the statute at issue must be “so punitive either in purpose or effect” as to negate the state’s allegedly nonpunitive purpose. (478 US at 369.) The Court concluded that the statute did not meet that test and that the Illinois law was therefore a civil statute to which the Fifth Amendment’s Self-Incrimination Clause did not apply.
Justice Stevens, writing for the dissent, argued that a number of considerations indicated that the Illinois statute was a criminal proceeding for purposes of the Fifth Amendment. He noted that a finding under the act resulted in a deprivation of liberty at least as significant as that arising in a typical criminal trial and that the criminal law occupied a central place in the sexually dangerous persons determination. Justice Stevens opined that “[w]hen the criminal law casts so long a shadow on a putatively civil proceeding, I think it clear that the procedure must be deemed a ‘criminal case’ within the meaning of the Fifth Amendment.” (478 US at 376.)
In State of New York v Nelson (30 Misc 3d 715 [Sup Ct, NY County 2010]), this court recently analyzed the question of whether the retroactive designation of certain non-sex crimes as “sexually motivated” felonies eligible for coverage under SOMTA violated the Ex Post Facto Clause of the United States Constitution. Relying upon many of the same considerations as the majority opinion of the United States Supreme Court in Allen, this court held that SOMTA’s retroactive designation of certain prior criminal convictions as sexually motivated was a civil procedure. SOMTA and statutes similar to SOMTA have also been held to be civil proceedings by New York appellate courts and the United States Supreme Court. (See Matter of State of New York v Wilkes, 77 AD3d 1451 [4th Dept 2010]; Kansas v Hendricks, 521 US 346, 369 [1997].) Courts have nevertheless recognized the profound liberty interests at stake in SOMTA proceedings and the need for the procedures resulting in a deprivation of liberty under the statute to meet the requirements of due process. “Involuntary civil confinement [pursuant to article 10] ‘may entail indefinite confinement, [which] could be a more intrusive exercise of state power than incarceration following a criminal conviction.’ ” (See Mental Hygiene Legal Serv. v Spitzer, 2007 WL 4115936, *6, 2007 US Dist LEXIS 85163, *21 [SD NY 2007], affd sub nom. Mental Hygiene Legal Servs. v Paterson, 2009 WL 579445, 2009 US App LEXIS 4942 [2d Cir 2009], quoting Project Release v Prevost, 722 F2d 960, 971 [2d Cir 1983].) “[F]reedom from physical restraint ‘has *1014 always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action . . . .’ ” (Hendricks, 521 US at 356, quoting Foucha v Louisiana, 504 US 71, 80 [1992].)
The court in Matter of State of New York v C.B. (23 Misc 3d 1130[A], 2009 NY Slip Op 51010[U], *4 [Sup Ct, Bronx County 2009]), confronting the direct question at issue here, held that “[n]o Fifth Amendment right applies in this civil, sex offender commitment proceeding [pursuant to article 10 of the Mental Hygiene Law].” The respondent’s claim in C.B. was that prior statements he had allegedly made could not be used against him at an article 10 trial in the absence of a Huntley hearing to consider whether the statements were voluntary. The C.B. court, in addition to the Allen case, cited two additional New York authorities which had reached the conclusion that the Fifth Amendment’s guarantee against compulsory self-incrimination was not applicable in analogous contexts. In Ughetto v Acrish (130 AD2d 12 [2d Dept 1987], appeal dismissed 70 NY2d 871 [1987]), the Court held that psychiatric patients subject to involuntary commitment under article 9 of the Mental Hygiene Law do not have a Fifth Amendment right against self-incrimination in prehearing interviews. The Court in Matter of Michael WW. (20 AD3d 609 [3d Dept 2005]) held that the Fifth Amendment right against self-incrimination does not apply in Family Court Act article 10 proceedings to determine whether children are abused or neglected.
In sum, while the Allen case at the time commanded only a bare majority of five Justices, it is clear that existing authorities provide no clear support for the proposition that a respondent in an article 10 trial may refuse to answer questions by asserting his Fifth Amendment right against compulsory self-incrimination.
Article I, § 6 of the New York State Constitution
The New York State Constitution’s compulsory self-incrimination clause contains the same substantive language as the Fifth Amendment.[2] The New York Court of Appeals has afforded greater rights under the New York Constitution’s right *1015 against self-incrimination clause, however, than the protections of the Fifth Amendment under some circumstances. (See People v Bethea, 67 NY2d 364 [1986] [state constitutional rule requiring the suppression of Mirandized questioning which follows un-Mirandized questioning in one continuous chain of events remains viable even if inconsistent with more restrictive federal constitutional rule]; compare People v Cunningham, 49 NY2d 203 [1980], with Edwards v Arizona, 451 US 477 [1981] [New York’s right to counsel rules applicable to the waiver of the right to counsel by a defendant in custody who has invoked his right to counsel is broader under state constitutional guarantees (including NY Const, art I, § 6) than those provided by the Federal Constitution]; People v Davis, 75 NY2d 517 [1990] [New York’s constitutional rules governing the right to counsel (including NY Const, art I, § 6) go beyond those provided by the federal and other state constitutions].)
In deciding whether the State Constitution provides broader protections than a federal constitutional provision with identical language (like the one at issue here) the New York courts engage in what is known as a “noninterpretive” review. Such an analysis considers a range of factors based on a “judicial perception of sound policy, justice and fundamental fairness.” (See Matter of Nassau County Grand Jury Subpoena Duces Tecum Dated June 24, 2003, 4 NY3d 665, 674-675 [2005].) This court’s research has not revealed any case where such an analysis has been conducted with respect to whether respondents in proceedings which bear some resemblance to article 10 have a right against self-incrimination which is broader than that provided by the Federal Constitution, however. There is thus no explicit support for the proposition that the State Constitution provides a more expansive right against compulsory self-incrimination in article 10 cases than the Federal Constitution provides.
CPLR 4501
CPLR 4501, entitled “Self-incrimination,” provides:
“A competent witness shall not be excused from answering a relevant question, on the ground only that the answer may tend to establish that he owes a debt or is otherwise subject to a civil suit. This section does not require a witness to give an answer which will tend to accuse himself of a crime or to expose him to a penalty or forfeiture, nor does it *1016 vary any other rule respecting the examination of a witness.”
There are, in the court’s view, two significant questions which arise with respect to the possible application of this statute to article 10. First, since the statute’s initial sentence refers to questions which would reveal that a witness might owe a debt or otherwise be subject to a civil suit, the State during argument on its application in this case urged that the statute was only intended to apply to questions implicating such monetary concerns and thus could not possibly apply in an article 10 proceeding. In the court’s view, while that is a valid argument, the State’s position does not appear to be reflected in the cases and Practice Commentaries discussed immediately infra. The second open question is the extent to which the statute protects damaging testimony by a witness beyond the protections provided by the Fifth Amendment. The language of the Fifth Amendment (discussed supra) and article I, § 6 of the New York State Constitution provides only that a person may not be “compelled in any criminal case to be a witness against himself? (“or herself,” under the state constitutional provision). CPLR 4501, however, in addition to excusing answers from a witness which would tend to accuse the witness of a crime, excuses answers which would tend to expose the witness to a “penalty or forfeiture.” As the CPLR Practice Commentaries on this issue point out:
“The scope of this protection is unclear. At minimum, it encompasses conduct that would also subject the witness to criminal prosecution. See generally C. McCormick, Evidence § 122 (6th ed. 2006). Beyond this, the cases provide little guidance except to suggest that the term ‘penalty or forfeiture’ is narrowly construed in this context. One court stated that the kind of penalty or forfeiture contemplated by the statutory predecessor to CPLR 4501 is ‘a sanction essentially criminal in nature.’ Application of Delehanty, 1952, 202 Misc. 40, 42 (Sup. Ct. N.Y. Co.), affirmed 208 A.D. 542 (1st Dep’t), affirmed 304 N.Y. 725.” (Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4501 [parallel citations omitted].)
The Practice Commentaries go on to note that the possible loss of public employment or the imposition of professional sanctions have been found insufficient to excuse a witness from answering questions (citing Busshart v Park, 112 AD2d 787 *1017 [4th Dept 1985]). The question of whether a respondent may be called as a witness by a petitioner against his will has been considered by several courts in proceedings to appoint guardians under article 81 of the Mental Hygiene Law. In Matter of A.G. (6 Misc 3d 447 [Sup Ct, Broome County 2004]) the court held that the Fifth Amendment and CPLR 4501 provided a privilege to a respondent in an article 81 guardianship proceeding to refuse to testify as a witness against himself:
“It is inherently offensive to our Constitution and due process to require a person to testify against himself or herself in a proceeding where that person’s liberty is at stake. The Fifth Amendment triumphantly says it cannot be done in criminal prosecutions. The Supreme Court has held it cannot be done in juvenile proceedings. (In re Gault, [387 US 1 (1967)].) The same has to be true of proceedings where a person’s life and liberty is at risk due to allegations of mental illness or incapacity.” (6 Misc 3d at 453.)
Two additional trial courts have cited the A.G. holding with approval. (See Matter of Teitelbaum, 10 Misc 3d 659, 662 n 2 [Sup Ct, Kings County, Nov. 10, 2005, Leventhal, J.]; Matter of Kufeld, 22 Misc 3d 1131[A], 2009 NY Slip Op 51020[U], *8 [Sup Ct, Bronx County, May 19, 2009, Roman, J.].) The Fourth Department, however, recently held that the Fifth Amendment’s right against compulsory self-incrimination did not apply to article 81 guardianship proceedings and that a respondent subject to an article 81 petition can be compelled to testify at a hearing against his will. (Matter of Heckl, 66 AD3d 1344 [4th Dept 2009].) In sum, especially in light of the Fourth Department’s holding in Heckl, CPLR 4501 provides no clear authority for a respondent to refuse to answer questions in an article 10 proceeding.
CPLR 4512
CPLR 4512, entitled “Competency of interested witness or spouse,” provides that “[e]xcept as otherwise expressly prescribed, a person shall not be excluded or excused from being a witness, by reason of his interest in the event or because he is a party or the spouse of a party.”
The Practice Commentaries for the statute indicate that it was enacted to abrogate the common-law rule which provided that a person with an interest in litigation or that person’s spouse was not competent to testify. (See Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, *1018 CPLR 4512.) Indeed the statute’s title refers to “competency” to testify. The statute also, however, obviously provides that a party may call an opposing party as a witness at a civil trial. (See McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20, 26 [1964] [“It has long been recognized in this State that a party in a civil suit may be called as a witness by his adversary and, as a general proposition, questioned as to matters relevant to the issues in dispute” (citations omitted)].)
Significantly, article 10 explicitly provides that the statute shall be governed by the provisions of article 45 of the CPLR. (See Mental Hygiene Law § 10.07 [c].) CPLR 4501 is contained in article 45. Thus, by its explicit terms, article 10 includes the CPLR provision which allows one party to call an opposing party as a witness. This obviously supports the notion that respondents may be called as witnesses by the State at SOMTA trials.
Article 10 of the Mental Hygiene Law
SOMTA was enacted by the Legislature in 2007 and created a comprehensive system to subject certain convicted sex offenders (and other offender categories not relevant here) to indefinite confinement or indefinite strict and intensive supervision and treatment based upon a finding that they suffer from a “Mental abnormality” as defined by the law.[3] ****8 As noted immediately supra, there is no clear right against self-incrimination in article 10 proceedings which can be derived from the Federal or State Constitution or the CPLR. On the other hand, the treatment of the issue in contexts analogous to SOMTA has been a close question. Four Justices of the Supreme Court found in the Mien case that respondents in proceedings similar to SOMTA did have a right against compulsory self-incrimination. Multiple trial courts have found such a right in guardianship proceedings based in part on CPLR 4501 under a statute where a respondent’s potential for the loss of liberty is much less significant than under SOMTA. The Court of Appeals has not hesitated to hold that greater rights against self-incrimination exist under the State Constitution than under the Fifth Amendment in appropriate cases.
The question of whether the language of article 10 itself allows the State to call a respondent as a witness over the *1019 respondent’s objection, in the court’s view, is likewise a close question. A number of the provisions of article 10, however, indicate that the Legislature did not intend to allow that result. First, article 10 directly addresses the question of who may call the respondent as a witness at an article 10 trial. The statute provides that “[t]he respondent may, as a matter of right, testify in his or her own behalf, call and examine other witnesses, and produce other evidence in his or her behalf.” (Mental Hygiene Law § 10.08 [g].) The statute does not contain any provision, however, which authorizes the State to call a respondent as a witness at his own trial. This creates a strong inference that the Legislature did not intend the State to have that right:
“It is a universal principle in the interpretation of statutes that expressio unius est exclusio alterius. That is, to say, the specific mention of one person or thing implies the exclusion of other persons or thing. As otherwise expressed, where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240; see also East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202 [2d Dept 2009]; Matter of Caspian Realty, Inc. v Zoning Bd. of Appeals of Town of Greenburgh, 68 AD3d 62 [2d Dept 2009].)
The statute also describes the ability of a respondent to testify on his own behalf as something he is entitled to do “as a matter of right.” (Mental Hygiene Law § 10.08 [g].) This language, of course, must be presumed to have been inserted by the Legislature into the statute for a purpose. (See Matter of Bliss v Bliss, 66 NY2d 382 [1985]; Direen Operating Corp. v State Tax Commn., 46 AD2d 191 [3d Dept 1974]; McKinney’s Statutes § 231.) A “right” as used in this context is “[something that is due to a person by just claim, legal guarantee, or moral principle.”[4] The fact that the ability of a respondent to testify is not only granted under the statute only to respondents but is also defined as a “right” such respondents possess further supports the inference, in the court’s view, that the Legislature intended the decision on whether to testify at an article 10 trial to rest with respondents alone.
A second provision of the statute, which directly follows this provision, also, in the court’s view, strongly supports this infer *1020 ence. Prior to trial, the Attorney General may request that a respondent be subject to a psychiatric examination and upon such a request the court must order such an examination. (Mental Hygiene Law § 10.06 [d].) The statute, however, provides no sanction or penalty of any kind if a respondent refuses to submit to such an examination. In fact, the statute explicitly contemplates that respondents may choose to refuse to participate in psychiatric examinations ordered at the State’s request and that in such circumstances the only remedy the State is entitled to is an instruction to the jury that a respondent refused to participate in such an examination: “The jury may hear evidence of the degree to which the respondent cooperated with the psychiatric examination. If the court finds that the respondent refused to submit to a psychiatric examination pursuant to this article, upon request it shall so instruct the jury.” (Mental Hygiene Law § 10.07 [c].)
In the court’s experience, it is universally understood by attorneys for the State and respondents that article 10 respondents are freely able to refuse to be interviewed by psychiatric examiners appointed at the State’s request for the purpose of presenting evidence at article 10 trials and that the only remedy for such refusals is a jury instruction. The Legislature could have imposed any number of sanctions against respondents who refused to submit to such psychiatric examinations. It chose to impose none. The statute also provides no authorization for the recording of psychiatric examinations when respondents do choose to participate in them and the First Department has held that such examinations may not be videotaped. (Matter of State of New York v Bernard D., 61 AD3d 567 [2009].) The fact that respondents do not have to submit to psychiatric interviews in connection with article 10 proceedings further supports the inference that article 10 does not require respondents to answer questions which may be used against them.
That inference is also supported, in the court’s view, by the overall procedural provisions of the statute. As noted supra, article 10 is a civil statute which is designed to protect public safety rather than to impose punishment. But the Legislature imbued the statute with many of the procedural protections of the criminal law. In one important respect, in fact, as outlined infra, the statute provides article 10 respondents greater procedural protection than criminal defendants. For example:
-Respondents have an absolute right to a trial by jury or alternatively may elect to waive that right and be tried before a *1021 court without a jury, as in a criminal trial. (Mental Hygiene Law § 10.07.)[5]
-The statute requires many of the provisions of the Criminal Procedure Law to be followed in selecting jurors. (Mental Hygiene Law § 10.07 [b].)
-A finding of a mental abnormality must be made unanimously by 12 jurors, in the same way that a guilt finding must be made in a criminal trial. (Mental Hygiene Law § 10.07 [d].)
-The burden of proof in article 10 proceedings is on the Attorney General, although the standard of proof is clear and convincing evidence rather than proof beyond a reasonable doubt. (Mental Hygiene Law § 10.07 [d].)
-Only persons convicted of certain felonies or charged with certain felonies and found to lack the capacity to be tried for such crimes or found not responsible for committing such crimes by reason of mental disease or defect may be subject to article 10 proceedings. (Mental Hygiene Law § 10.03 [g].)
-Respondents are entitled to have counsel appointed to represent them during any trial or hearing proceedings. (Mental Hygiene Law § 10.08 [g].)
-If two successive juries are unable to agree on a unanimous verdict that the respondent suffers from a mental abnormality, the petition against the respondent must be dismissed. (Mental Hygiene Law § 10.07 [e].) This is a protection which exceeds that afforded to criminal defendants, who may be subjected to more than two trials.
In addition, the chapter which enacted article 10 (L 2007, ch 7) also adopted a number of new criminal provisions including the creation of “sexually motivated” felonies, the imposition of significantly longer periods of postrelease supervision on sex offenders and the modification of certain sex offender prison terms from indeterminate to determinate sentences. The Legislature, in enacting chapter 7, in short, was focused on the provisions of *1022 the criminal law. The fact that criminal defendants cannot be called by the prosecution as a witness in a criminal trial, of course, is a protection so thoroughly ingrained in our jurisprudence that it does not even deserve mention when new criminal laws are enacted. The Criminal Procedure Law’s provisions dealing with the protection against self-incrimination were last modified in 1970. (See CPL art 50.)
In the court’s view, the most reasonable inference which can be drawn from the provisions of article 10 is that the Legislature implicitly assumed that the well established right of a criminal defendant to refuse to be called as a witness by the prosecution would apply in article 10 trials. This explains why the statute gives respondents the “right” to testify on their own behalf but provides no equivalent statutory right to petitioners and why the statute does not compel respondents to answer questions put to them in court-ordered psychiatric examinations or even allow such examinations to be recorded. It is consistent with the range of other protections which were imported into the statute by the Legislature. It is consistent with the fact that in designing article 10, the Legislature strove to create due process and fundamental fairness to petitioners and respondents in proceedings which in every case present the very real possibility of lifetime confinement.
Article 10 trials have also apparently proceeded during the past four years since the statute’s enactment in a manner which is consistent with the court’s holding here. Although this court has not conducted a survey of the number of times in which the instant issue has arisen, it is clear that applications by the State to call respondents as witnesses have been rare. There is not a single reported opinion on the subject. That authority was also clearly not necessary in this matter. As noted supra, the jury found that the respondent suffered from a mental abnormality in this case even though this court denied the State’s application to call the respondent as a witness.
An interview or court examination of an article 10 respondent can undoubtedly be very useful in assessing whether a respondent suffers from a mental abnormality. But by employing the “professional reliability exception” to the hearsay rule and the additional specific evidentiary allowances provided under article 10, psychiatric experts in article 10 trials are permitted and typically do rely on a rich range of other materials to assess a respondent’s condition. Such materials typically include police, *1023 parole and correction records, mental health and sex offender treatment records, presentence investigation reports and prior trial and plea transcripts. (See Matter of State of New York v Motzer, 79 AD3d 1687 [4th Dept 2010]; Matter of State of New York v Pierce, 79 AD3d 1779 [4th Dept 2010]; Matter of State of New York v Fox, 79 AD3d 1782 [4th Dept 2010].) The State may also call fact witnesses, recount admissions previously made by respondents, introduce treatment reports and records and repeat otherwise inadmissible hearsay information to the extent permissible to inform a factfinder about the basis for an expert witness’s opinion. (Id.) Thus, even when the testimony of a respondent is not presented to an article 10 jury, as in the instant matter, there is a myriad of other information sources which can allow for a fully informed verdict.
In the court’s view, the specific provisions of article 10 and the reasonable inferences to be drawn from those provisions also override the general provisions of article 45 of the CPLR, including CPLR 4512, which provides that a person shall not be excused from being a witness because the person has an interest in the outcome of a case or is a party. Article 45 of the CPLR provides the general rules of evidence which apply to all civil and criminal cases. (See CPL 60.10 [unless abrogated by a specific statute or judicially created rule, the rules of evidence applicable in civil proceedings apply to criminal proceedings].) These rules generally apply to article 10 cases. But article 10 also contains a number of specific evidentiary provisions which are inconsistent with article 45. In the court’s view, the right of a respondent to refuse to testify at an article 10 trial is one of those provisions.
Where a general and a specific provision of a statute address the same matter, like the general provisions of CPLR article 45 and the specific provisions of article 10, it is the specific enactment of the Legislature, rather than any general rule which is controlling:
“It is a well established principle in the construction of statutes that, whenever there is a general and particular provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable. The particular provision, in other words, is considered in the nature of an exception to the general where the two are incompatible, and so far as the *1024 particular intention is applicable, the general intention yields.” (McKinney’s Statutes § 238; see also People v Lawrence, 64 NY2d 200 [1984]; People v Mobil Oil Corp., 48 NY2d 192 [1979].)
For all of these reasons, the court holds that, absent the consent of a respondent, a respondent cannot be called as a witness by the State at an article 10 trial and be compelled to testify against himself.

. The Illinois statute at issue in Allen differed in significant respects from New York’s SOMTA statute and predated the wave of sex offender civil management laws which were enacted beginning in the 1990s. The Supreme Court’s analysis of the Fifth Amendment issue in Allen, however, nevertheless is highly relevant, in this court’s view, to the question here. Like SOMTA, the Illinois statute at issue in Allen allowed for indefinite confinement upon a finding that a person had criminal propensities towards the commission of sex offenses.

. The language of the state constitutional provision differs from the Fifth Amendment only to the extent that the state constitutional provision is gender neutral (referring to the fact that “he or she” cannot be compelled to be a witness against “himself or herself’) while the Fifth Amendment refers only to the male gender (a person cannot be compelled to be a witness against “himself’).

. A “Mental abnormality” under the statute is defined as a “congenital or acquired condition, disease or disorder that affects the emotional, cognitive or volitional capacity of a person in a manner which predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct.” (Mental Hygiene Law § 10.03 [i].)

. Black’s Law Dictionary 1436 (9th ed 2009).

. To the court’s knowledge, the State has never claimed that the State can elect to have an article 10 case tried before a court without a jury. Yet, as with respect to the instant question, the article 10 statute does not explicitly address that issue. It provides only that a respondent may waive a jury trial (as in a criminal case). The fact that the State does not have a concomitant right under article 10 to waive a jury trial is derived from the reasonable inference that had the Legislature intended for the State to have the same right, it would have said so. That inference derives from the same reasoning process “the specific mention of one person or thing implies the exclusion of other persons or thing[s]” outlined supra. (See McKinney’s Statutes § 240.)